193 N.J. Super. 716 (1984)
475 A.2d 686
JAMES VINCENT, INDIVIDUALLY, AND JAMES VINCENT, INC., THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
ATELIERS DE LA MOTOBECANE, S.A., THIRD PARTY DEFENDANT-APPELLANT.[1]
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1984.
Decided May 9, 1984.
*718 Before Judges ANTELL, JOELSON and McELROY.
Carl Greenberg argued the cause for appellant (Porzio, Bromberg & Newman, attorneys).
Glenn A. Montgomery argued the cause for respondent (Robert C. Pollock, Jr. and William J. Volonte, attorneys).
The opinion of the Court was delivered by, JOELSON, J.A.D.
*719 Plaintiff brought action for damages for injuries he sustained while a passenger on a moped. The named defendants were Douglas Rizzi who was the operator of the moped, Motobecane America Ltd., the alleged manufacturer of the moped, and James Vincent, individually, and James Vincent, Inc. (Vincent), the retailers of the moped. Upon leave granted by the trial court, Vincent filed a third party complaint against Ateliers de la Motobecane, S.A. (Motobecane), alleging that that French corporation was actually the manufacturer of the moped, and seeking indemnification in the event of an adverse judgment. Vincent claimed in its third party complaint that the primary liability would be that of Motobecane based on strict liability "... in the design, manufacture, distribution and sale of the aforesaid moped." Thereafter, plaintiff amended his complaint so as to join the French corporation, Motobecane, as a direct defendant.
Vincent sought discovery by way of interrogatories and depositions. Motobecane's counsel refused to supply this discovery, contending that the furnishing of the requested information would be a violation of the French criminal law. On October 11, 1982, the trial judge signed an order directing that a representative of Motobecane testify at depositions as to the entire braking system of the moped and produce all engineering documents or diagrams with regard to the braking system. The order also required Motobecane's expert witness to appear for depositions in New Jersey. Finally, the order suppressed Motobecane's defense and entered default against Motobecane because of its failure to comply with the court's previous order to answer the interrogatories. This is Motobecane's interlocutory appeal, on leave granted, from the trial court's order of October 11, 1982. We reverse.
French Law 80-538 of July 16, 1980 provides as follows:
Art. 1.  Outside of international treaties or conventions, it is forbidden for any French citizen or resident, or any director, officer, employee, or agent of any company having its headquarters or an office in France, to communicate in *720 writing, orally, or in any other way, to any foreign public authority documents or information of an economic, commercial, industrial, financial or technical nature where, in the discretion of the competent administrative authority, the communication might endanger the sovereignty, security, or essential economic interests of France or the public order.
Art. 1. bis.  Outside of international treaties or conventions, it is forbidden for any person to request, search for, or communicate, in writing, orally, or in any other way, documents or information of an economic, commercial, industrial, financial or technical nature for the purpose of using such documents or information in a foreign judicial or administrative proceeding.
Art. 2  The persons covered by Article 1 and 1 bis must advise without delay the competent minister as soon as they are requested to make such communications.
Art. 3  Without prejudice to any additional penalties prescribed by law, any violation of Articles 1 and 1 bis shall be punished by two to six months in prison, or a fine of 10,000 to 120,000 francs, or both....
"It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign." Societe Internationale v. Rogers, 357 U.S. 197, 211, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255, 1267 (1958). However, as emphasized in the brief submitted on behalf of Motobecane, the French law does not preclude Vincent from obtaining its discovery, but only prohibits such discovery "outside of international treaties or conventions...." Thus, Motobecane contends, that "[s]ince the United States and France are both parties to the Hague Convention, Vincent could obtain access to discovery information through this channel." This contention is supported by material in Motobecane's appendix.
The third party complaint in this matter was filed on October 13, 1982. Included in Motobecane's appendix is a letter received in another matter by Motobecane's attorney in France from the French Ministry of Foreign Affairs and the French Ministry of Justice. The letter of the Ministry of Foreign Affairs dated June 25, 1981 acknowledged receipt of the attorney's letter of May 21, 1981, informing the Ministry that discovery had been sought from Motobecane in a products liability action brought in the United States, and that the *721 information requested was "... of a commercial and, more especially technical nature." In answer to the attorney's inquiry as to whether it could provide such information, the Ministry of Foreign Affairs advised him that Motobecane could "... only communicate these documents by respecting the procedures laid down by the Hague Convention of March 18, 1970...." The Ministry's letter further referred counsel to the Ministry of Justice for procedures to be followed in this respect.
Accordingly, Motobecane's attorney on September 15, 1981 wrote to the Ministry of Justice. He received the following answer from the Director of Civil Affairs of the Department of Justice:
You have asked me to point out to you the procedure to be followed in order to permit your client, the company Les Ateliers de La Motobecane, situated in France, to reply to a written questionnaire intended to be produced in legal proceedings in progress in the United States. This questionnaire is intended to make technical and commercial information available to the American legal authorities.
I hereby have the honour to inform you that the acquiring of evidence on French territory, in application of the Hague Convention of 18th March 1970 concerning the acquiring of evidence abroad, corroborated by the Law of 25th July 1968, modified by the Law of 16th July 1980, must be made exclusively by one of two methods, as follows: either by means of a rogatory commission addressed for execution to the French judicial authorities, or via a person designated as commissioner by the American judicial authorities, who is authorised to accomplish his investigations by the French Ministry of Justice.
The case referred to in the letter quoted above and the third party action here are both product liability cases. We have no reason to expect that upon proper application by Vincent, the same procedures outlined in the letter from the Ministry of Justice will not be acceptable. Moreover, it is Vincent's obligation "... to first seek the cooperation and advice..." of the foreign government. "Defendant is under no obligation to make such a request." Pierburg GmbH & Co. KG v. Superior Court, 137 Cal. App.3d 238, 245, 186 Cal. Rptr. 876, 881 (Cal. App. 1982). Vincent has not yet made application for discovery through available diplomatic channels. It is true that by proceeding in that manner, Vincent may be required to expend additional time and money. However, in choosing to sell the *722 products of a French manufacturer, Vincent cannot successfully complain about the added expense caused by its necessity to comply with the procedures required by French law. It should be noted that this appeal has not been taken by the injured plaintiff, a party having no prior voluntary relationship with the French company.[2]
In its brief, Vincent asserts that "[t]he Hague Evidence Convention offers only an illusory remedy." In this respect, it points to the fact that Article 23 of the Hague Convention provides that "[a] contracting State may ... declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries," and that France has so declared. See 28 U.S.C.A. § 1781 (West Cum.Supp. 1983) at 78. However the above-quoted letter from the French Ministry of Justice indicates that upon proper application, there are avenues for obtaining "... technical and commercial information." In so declaring the Ministry of Justice perhaps relied on Article 33 of the Hague Convention, which provides that "[e]ach Contracting State may at any time withdraw a reservation it has made." See 28 U.S.C.A. § 1781 (West Cum.Supp. 1983) at 78, which states that the French Government has designated the Ministry of Justice "... to give permission to diplomatic officers or consular agents of a Contracting State to take the evidence, without compulsion, of persons other than a national of that State in aid of proceedings commenced in the courts of a State which they represent." We have already mentioned that in its letter of June 25, 1981 regarding a similar case, the Ministry of Foreign Affairs referred Motobecane to the Ministry of Justice for procedures whereby Motobecane could "... communicate these documents...." Moreover, if Vincent is denied access to *723 the actual documents themselves, it may still be able, even without them, to obtain the technical and commercial information it seeks. Until Vincent makes proper application, we will not know exactly what discovery, if any, it can obtain. As we shall now discuss, the trial court will still be open to Vincent for appropriate relief if its good faith efforts to acquire the desired information are defeated.
American courts traditionally recognize international comity. Volkswagenwerk Aktiengesellschaft v. Superior Court of Alameda County, 123 Cal. App.3d 840, 857, 176 Cal. Rptr. 874, 884 (Cal. App. 1981). A state court in dealing with a matter such as this, "... should require litigants seeking such discovery to first attempt to comply with the Convention before allowing the litigant to disregard it." Pierburg GmbH & Co. KG v. Superior Court, supra, 137 Cal. App.3d at 240, 186 Cal. Rptr. at 877. If it should happen that after a good faith attempt to comply with the suggestions of the French Ministry of Justice, Vincent shall be unable for any reason, including the non-cooperation of Motobecane, to obtain the discovery it seeks, our courts remain available for further consideration of the matter. Thus, in Pierburg, supra, the California court required the party seeking discovery to first attempt to comply with the Hague Convention. As stated in Philadelphia Gear Corporation v. American Pfauter Corporation, et al., 100 F.R.D. 58 (E.D.Pa. 1983):
... [O]nce plaintiff proceeds in the manner set forth in the Hague Convention, it can be anticipated that the German authorities will fully cooperate in gathering the necessary evidence. Of course, in the event that such efforts prove futile, further resort may be sought from this court.
Id. at 61.
We trust that in following the prescribed diplomatic procedures, Vincent's reasonable expectation of obtaining discovery will not be frustrated. However, we repeat that if Vincent's efforts are thwarted, the trial court will be free to consider the matter further. Good faith on the part of all concerned is required. See United States v. Vetco Inc., 644 F.2d 1324 (9th Cir.1980); *724 SEC v. Banca Della Svizzera Italiana, 92 F.R.D. 111 (S.D.N.Y. 1981).
Reversed and remanded.
NOTES
[1] The caption of the direct action, as amended, is:
 Ralph Dolce, Jr., an infant by his guardian ad
 litem Ralph Dolce, Sr., and Ralph Dolce, Sr.,
 individually,
 Plaintiffs,
 v.
 DOUGLAS RIZZI, an infant by his guardian ad litem
 NICHOLAS RIZZI, and NICHOLAS RIZZI, individually,
 MOTOBECANE AMERICA, LTD., JAMES VINCENT,
 individually and JAMES VINCENT, INC. and ATELIERS
 de la MOTOBECANE, S.A.,
 Defendants.

However, only the third party plaintiffs and third party defendant are parties to this appeal.
[2] It is not revealed in the brief and appendices submitted to us whether plaintiffs (Dolce) sought discovery from Motobecane. After notifying the Clerk of the Appellate Division that he would not file a brief, plaintiffs' counsel recently wrote to us that he adopted the brief submitted on behalf of Vincent.