260 N.J. Super. 110 (1992)
615 A.2d 297
ROBERT V. KNIGHT, PLAINTIFF,
v.
FORD MOTOR COMPANY, ALLIED-SIGNAL, INC., CANADIAN FRAM LIMITED, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided October 9, 1992.
*111 Robert J. Jeney, Jr., for plaintiff.
Robert M. Leonard, for defendant Allied Signal, Inc. (Shanley & Fisher, attorneys).
James S. Dobis, for defendant Ford Motor Company (Dobis & Reilly, attorneys).
ALLEY, J.S.C.

A. Introduction:

This products liability case is pending against Ford Motor Company, Allied-Signal, Inc., and the latter's purported subsidiary Canadian Fram Limited, which allegedly manufactured a coolant fan installed in a 1979 Ford Monarch. Plaintiff asserts that he was injured on December 3, 1990, because a portion of the coolant fan broke off and struck him. Ford states in its *112 answers to interrogatories that the coolant fan was manufactured by Canadian Fram. Plaintiff alleges that Allied-Signal is liable as the parent company of Canadian Fram. For the reasons discussed below, the court has determined that parties in this case seeking evidence from within Germany should proceed to do so in accordance with the Hague Evidence Convention.

B. Factual and Procedural Background:

Allied-Signal moved for summary judgment in September 1992, claiming that it and its subsidiaries and affiliates do not own any stock or assets in Canadian Fram, and that they did not own any when the action was commenced. Allied-Signal, through two independent subsidiaries, had held an interest in Canadian Fram, but maintained that those interests were sold in 1988 to Siemens Automotive Limited, an Ontario subsidiary of Siemens AG of Germany. Allied-Signal also contended that as a result of a complex series of transactions, Canadian Fram no longer existed as an active business entity by the time the action was commenced. Although it had not seen the fan, Allied-Signal admitted that it could have been manufactured by Canadian Fram. There was no indication in the summary judgment record as to when Allied-Signal acquired its interest in Canadian Fram.
The summary judgment record was unclear as to any correlation between the time of manufacture and the movant's ownership in Canadian Fram. There also was no clear indication whether there would be facts sufficient to pierce the corporate veil either for acts occurring while Allied-Signal owned an interest in Canadian Fram, or alternatively to establish successor liability.
The court accordingly denied summary judgment, without prejudice to renewal, to afford the parties in this case a reasonable opportunity through discovery to ascertain facts relevant to the summary judgment issues. Moreover, it directed *113 the parties seeking to gather that evidence to do so, to the extent the witnesses and other evidence are located in Germany, under the Hague Evidence Convention, and to proceed diligently to complete the discovery by February 1, 1993.
Plaintiff has now moved to join as defendants several additional parties, including Siemens AG, based in Germany. The motion is unopposed and will be granted, but the court typically imposes certain case management terms, which usually include accelerated discovery, as a condition of entering an order allowing joinder of new parties, so that the joinder will not unduly delay the preparation of a case for trial.[1]
This opinion summarizes why the court has determined, now that Siemens AG is being named as a defendant, that the case management discovery terms customarily imposed when the joinder of a new defendant is allowed should in this case include a requirement that evidence to be taken in or gathered from within Germany must be pursued under the Hague Evidence Convention.

C. Use of the Hague Evidence Convention:

The Hague Evidence Convention (Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444), is an international treaty, negotiated at the request of the United States, which prescribes methods for the gathering of evidence *114 in international disputes and is in force among numerous nations, including the United States and Germany (both countries with at least a potential interest in the present litigation).[2]
The Supreme Court of the United States, in Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 540, 542, 107 S.Ct. 2542, 2554-56, 96 L.Ed.2d 461, 481, 482-83 (1987) (hereinafter "Aerospatiale"), declined to hold that the Convention's procedures are exclusive, and did not require as a fixed rule in every case the use of the Convention before resort to United States discovery procedures, but allowed the lower courts to decide in each particular case whether the Convention should be used. The Court cautioned that, in determining whether use of the Convention's procedures should be required in particular litigation, lower courts must be alert to the necessity of carefully supervising discovery against foreign litigants:
American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the District Court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.
[482 U.S. 522, 546, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461, 485]
*115 "Special vigilance" against discovery abuses is a duty of state courts as well as federal courts. In this case, evidence apparently will be sought from Siemens AG, based in Germany in the Munich area, and the court will require the parties, under the circumstances of this litigation, in obtaining evidence from within Germany, to resort first to the procedures of the Convention (rather than employing the discovery procedures of the New Jersey Rules of Court, R. 4:10-1 et seq.), because of its potential to serve here as an effective means of gathering evidence.[3]
The Convention sets forth two procedures for pursuing evidence abroad, the "letter of request" procedure of Chapter I and the taking of evidence by diplomatic officers and others under Chapter II. This opinion focuses on letters of request, the first method of obtaining evidence that is provided for under the Convention. Article 3 lists the information to be included in the letter of request. Under Article 9, the nations that are parties to the Convention have agreed that requests "will be executed expeditiously." Article 9 of the Convention provides that if a party seeking evidence desires that a "special method or procedure be followed," a request for that method or procedure can be specified. (Examples can include requests for things that are common in litigation in this country but might not be used in the other countries, e.g., having the witness placed under oath, allowing cross-examination, and permitting the parties to have a verbatim transcript prepared.)
Discovery American-style  criticized enough in its native land,  can be a cause of "much friction" abroad. Restatement (Third) of Foreign Relations Law of the United States, § 442 (Reporters' Note 1) (1987). Indeed, after Aerospatiale was decided, a Special Commission of the Hague Conference was *116 held at The Hague in 1989, in which the United States participated, and the Special Commission encouraged the giving of "priority" to the "procedures of the Convention when evidence located abroad is being sought," as well as the relaxation of existing limitations which numerous countries have placed on the production of documents.[4]
Some signatory nations that have embraced the Convention have shown good faith in accommodating their own procedures to unfamiliar practices that might arise in transactional litigation. One example is the amendment by the Republic of France of its Civil Code in 1975, amendments which were made for the particular purpose of being able to handle letters of request pursuant to the Evidence Convention. (French Civil Code (Nouveau Code de Procedure Civile), Article 736 et seq., referred to in Born & Westin, supra note 1, at 438, and summarized in Prescott & Alley, supra note 2, at 965-66.)
Provision has been made in German law for the execution of letters of request under the Convention that seek the production of documents, provided that production is made pursuant to implementing regulations. (Law of December 22, 1977, Bundesgesetzblatt, Teil I (BGB1) I 3015.) When the Aerospatiale case was pending, the government of Germany represented to the Supreme Court in its amicus curiae brief (at 9-10) that it had "accelerated the procedure for the issuance of regulations" for that purpose. In point of fact, there continues to be a delay in the issuance of those regulations, which have *117 never been adopted.[5] Germany has, however, accommodated discovery requests of litigants in complex U.S. litigation[6], such as by affording counsel substantial latitude and by permitting witnesses to be examined about the contents of documents notwithstanding Germany's substantially different procedures for evidence gathering.[7] The continuing delay of Germany in adopting the implementing resolution need not be fatal to attempting first use of the Convention here. The court recognizes that no one can rule out the possibility in any case that someone may seek documents or other evidence from a source in Germany or elsewhere but be unable to obtain the evidence either by means of the Convention or through voluntary cooperation. That result is not, however, a foregone conclusion, and if it occurs in this case, a party who has met an unfair obstacle will be free to make a further application to the court, upon a showing of a failure of good-faith efforts to obtain the evidence, to seek it by other means.[8]
To be sure, application of the result in Aerospatiale, and *118 judicial enthusiasm for the Convention, have not been uniform.[9] To cite but a few examples, the Court in Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33 (N.D.N.Y. 1987), ruled that the "burden should be placed on the party opposing the use of Convention procedures to demonstrate that those procedures would frustrate" the interests of United States parties in seeking evidence abroad. 117 F.R.D. at 38. This useful rule seems not to have been precluded by Aerospatiale, under a careful reading of the majority opinion. Indeed, essentially this view was endorsed by the 1989 Hague Conference Special Commission (Special Commission Report, supra note 4, at 21, par. 36(f)).[10] Moreover, one United States Court of Appeals noted pointedly that trial courts should "be sensitive to interests expressed in the Hague Convention" and that "many foreign countries, particularly civil law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may be offended by our pretrial procedures." In re Anschuetz, 838 F.2d 1362, 1364 (5th Cir.1988).
On the other hand, in Benton Graphics v. Uddeholm Corp., 118 F.R.D. 386 (D.N.J. 1987), the magistrate, who of course did not have the benefit of the results of the subsequently-held *119 1989 Hague Conference Special Commission meeting, imposed stringent standards on the Swedish defendants who were advocating employment of the Convention, and denied an order compelling the Convention's use. Other authorities are noted in Born & Hoing, supra note 9. In the present case, a less rigorous standard seems appropriate, and this appears to be consonant with a recognition that the Convention affords procedures which the government of the United States agreed can be used in international discovery, and indeed that the Convention was negotiated on its initiative.
The comity factors whose consideration was directed in Aerospatiale as part of the balancing process to determine whether the Convention should or should not be applied (482 U.S. 522, 544-46, 107 S.Ct. 2542, 2556-57, 96 L.Ed.2d 461, 484-85), also tend to support use of the Convention here. In reviewing the relevant factors referred to by the Supreme Court, it appears that the sovereign interests of Germany would be affected by discovery of evidence from Germany under U.S. domestic procedures before the Convention's procedures have been given an opportunity to operate; no reason appears why resort to the Convention's procedures may not prove effective here; the breadth and intrusiveness of the international discovery has not yet been identified, because it has not yet been initiated, but at this juncture there seems to be no reason why the discovery that one would expect in a case such as this could not be pursued under the Convention without undue breadth and intrusiveness; and the special difficulties that may arise for foreign litigants in providing discovery under our U.S. domestic procedures are a sufficiently substantial prospect, in dealing with a civil law legal system such as Germany's, as to encourage employment of the Convention.[11]
*120 In short, the Hague Evidence Convention's procedures for gathering evidence have been agreed to by the United States and by countries that include some of its most prominent trading partners. Its effectiveness is largely a function of the willingness of courts and litigants to attempt to use it, to balance and accommodate, not merely to serve merely parochial interests. Its use has been urged by the 1989 Special Commission. Considerations of docket management cannot be ignored, but no deadlines in this case are so compelling that expediency alone should preclude resort to the Convention.
The Supreme Court in Aerospatiale cautioned, as already noted, "When it is necessary to seek evidence abroad," the trial courts "must supervise pretrial proceedings particularly closely to prevent discovery abuses." 482 U.S. 522, 546, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461, 465. The Convention is as binding on this court as it is on federal courts under the Supremacy Clause of the Constitution of the United States (U.S. Const. art. VI, cl. 2), as a treaty of the United States which forms part of the "supreme law of the land."[12] While no specific abuse by any party has yet occurred here, the court finds it appropriate to remit the parties who desire to obtain evidence from within Germany, a country that is signatory to the Evidence Convention, to first using the procedures of the Convention before resorting to domestic procedures. If the proponents of discovery do so expeditiously and in good faith but find that reasonable requests under the Convention are not being met with adequate responses in a reasonably timely manner under the *121 circumstances, they will be free to reopen the issue by requesting leave to pursue the desired evidence through other means.
NOTES
[1] It is significant that at this point Siemens AG will no longer remain merely a potential source of evidence, but is to be joined as a defendant. Typically, if a non-party witness is not subject to a court's subpoena power, the Convention is the sole practical means of enforcing discovery requests, since the effectiveness of those subpoenas may be limited to the territory of the United States (or to that of a particular state, if the subpoena is issued by a state court). See Gary B. Born & David F. Westin, International Civil Litigation in the United States Courts 357-61 (2d ed. 1992). There may not have been much alternative, when Siemens AG was a non-party, to pursuing evidence against it under the Convention, but when a party is an object of discovery, the situation is quite different.
[2] The Convention has generated substantial legal writing, much of which is cited in Born & Westin, supra note 1, at 345, 411-47; Bruno Ristau, International Judicial Assistance (Civil and Commercial) (1990 ed.); Joseph F. Weis, Jr., The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity, 50 U.Pitt.L.Rev. 903 (1989); and Darrell Prescott & Edwin R. Alley, Effective Evidence-Taking Under the Hague Convention, 22 Int'l.Law. 939 (1988). The Evidence Convention is readily accessible to U.S. lawyers, for it is included in 28 U.S.C.A. § 1781 (Supp. 1992) and also appears in the Martindale-Hubbell law directory's international section. In general, the procedures prescribed in the Convention are clearly set out, and a model for letters of request has been recommended for use under the Convention.
[3] See generally, Born & Westin, supra note 1; Weis, supra note 2; Prescott & Alley, supra note 2.
[4] Report of the Work of the Hague Conference Special Commission of April 1989 at 19, par. 34(c), (d) (reprinted at 28 International Legal Materials 1556 (1989)); Edwin R. Alley, Hague Conference on Private International Law: 1989 Special Commission Meeting on the Operation of the Hague Evidence Convention and the Hague Service Convention, 8 B.U.Int'l.L.J. 187, 191-92 (1990). The participants in the Special Commission consisted mainly of official representatives of the governments of countries that are parties to the Hague Evidence and Service Conventions, including the United States and Germany. Id. at 187.
[5] This delay has occurred despite Germany's representations to the Supreme Court, and notwithstanding the appearance of substantial progress in the direction of formulating an implementing resolution as a result of the 1987 session in Munich of the Joint Working Group on the Hague Evidence Convention, co-sponsored by the American Bar Association and composed of lawyers, law professors, government representatives, and business officials from Germany and the United States.
[6] Charles Platto, Taking Evidence Abroad for Use in Civil Cases in the United States  A Practical Guide, 16 Int'l.Law. 575, 584 (1982).
[7] Some of these differences are noted in David J. Gerber, Extraterritorial Discovery and the Conflict of Procedural Systems: Germany and the United States, 34 Am.J.Comp.L. 745 (1986), and Dirk-Reiner Martens, German Civil Procedure and the Implementation of the Hague Evidence Convention, 1 Int'l.Litig.Q. 115 (1985).
[8] Significantly, the court is not presented at this time with a foreign litigant who is vigorously using U.S. discovery procedures to get massive discovery from an adversary against whom it is simultaneously holding out the Convention as a shield to deter foreign discovery.
[9] See Gary B. Born & Scott Hoing, Comity and the Lower Courts: Post-Aerospatiale Applications of the Hague Evidence Convention, 24 Int'l.Law. 393 (1990).
[10] Responses to Aerospatiale include not only activities of the 1989 Special Commission but also a proposal by a distinguished federal appellate judge that first use of the Convention be required through an amendment to the Federal Rules of Civil Procedure. Weis, supra note 2. The Judicial Conference Advisory Committee essentially followed this suggestion in promulgating a proposed amendment to Rule 26(a) of the Federal Rules in late 1989, but this proposed amendment was radically changed by a later proposal that has been criticized by other nations that are signatories to the Convention. The rule has not yet been amended and it is far from certain that the amendment efforts will bear fruit (Born & Westin, supra note 1, at 435-36), and in any event such an amendment would not directly affect state court procedure. The current posture of events suggests strongly the importance of trial courts heeding the urging of the Special Commission that the Convention be given a further opportunity to prove its utility.
[11] If jurisdiction does not exist over a foreign party, obviously there can be no merits discovery under the rules of a court that lacks jurisdiction, and the Convention may provide the only recourse for obtaining evidence. Only when jurisdiction is found does the analysis even begin as to whether the Convention should be invoked. Jurisdiction simply triggers the analysis, it does not dispense with it. Manifestly, it cannot be assumed that the mere existence of jurisdiction bars resort to the Convention.
[12] A potential issue as to the scope of the Convention which need not be decided here is whether a state court can "go beyond the minimum standard of deference to foreign interests established by the Aerospatiale Court" and mandate in every case, as a matter of state judicial administration, or through a more expansive interpretation of international comity requirements, first use of the Convention. Born & Westin, supra note 1, at 437.