263 N.J. Super. 455 (1993)
623 A.2d 263
BINSON MOAKE AND MAUREEN MOAKE, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
SOURCE INTERNATIONAL CORPORATION, DEFENDANT, AND ZEITLER SITZMOEBEL GMBH, A GERMAN CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1993.
Decided April 7, 1993.
*456 Before Judges MICHELS, BILDER and WALLACE.
Mark J. Hill argued the cause for appellant (Christie, Pabarue, Mortensen and Young, attorneys; Mr. Hill, of counsel and on the brief).
William J. Volonte argued the cause for respondents (Reitman Parsonnet, attorneys; Mr. Volonte, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted defendant Zeitler Sitzmoebel GmbH (Zeitler), a German corporation, leave to appeal from an order of the Law Division that compelled it to answer interrogatories propounded by plaintiffs Binson Moake and Maureen Moake, his wife, in this personal injury product liability action.
Plaintiff Binson Moake (Moake), a postal worker, was injured when the chair that he was sitting on collapsed. Moake instituted this action against defendant Source International Corporation (Source) as the manufacturer of the chair, seeking to recover damages for the personal injuries he sustained in the *457 accident. His wife sued per quod. In answers to interrogatories, Source disclaimed liability for the manufacture of the chair and named Zeitler as the responsible party for any claimed manufacturing or design defects. Plaintiffs thereupon amended the complaint to include Zeitler as a defendant. Plaintiffs' counsel inquired of Zeitler whether it desired to be served through the formality of the Hague Convention. Zeitler apparently responded in the affirmative and plaintiffs served Zeitler through the Hague Convention. Thereafter, Zeitler served plaintiffs with requests for documents and interrogatories pursuant to our Rules of Court. Plaintiffs answered the interrogatories and served Zeitler with interrogatories. Zeitler objected, claiming that the interrogatories must be served in accordance with the Hague Convention.
As a result of Zeitler's refusal to answer interrogatories, plaintiffs moved to compel Zeitler to answer the interrogatories. Zeitler filed a cross-motion for a protective order, requiring discovery to proceed in accordance with the Hague Convention. Following oral argument, the trial court held that discovery need not proceed under the Hague Convention, concluding, in part, that "international comity will not be offended nor the dictates of our law by requiring the defendant German national to answer interrogatories as presently propounded." We granted Zeitler leave to appeal.
Zeitler contends essentially that plaintiffs should be required to follow the procedures set forth in the Hague Convention in seeking discovery. We disagree. We are satisfied that the trial court properly compelled Zeitler to answer interrogatories in accordance with our Rules of Court and that there was no need, in the circumstances here present, to require plaintiffs to proceed in accordance with the Hague Convention. Moreover, contrary to Zeitler's claim, this matter is no longer controlled by Vincent v. Ateliers de la Motobecane, S.A., 193 N.J. Super. 716, 723, 475 A.2d 686 (App.Div. 1984). Rather, this matter is controlled by the United States Supreme Court's decision in Societe Nationale Industrielle Aerospatiale v. United States *458 District Court, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). The decision of the trial court is consistent with the principles set forth by the United States Supreme Court and we, therefore, affirm.
In Societe Nationale Industrielle Aerospatiale v. United States District Court, supra, 482 U.S. at 538, 107 S.Ct. at 2553, 96 L.Ed.2d at 480, the Supreme Court held that "the text of the [Hague] Convention, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad." The Supreme Court based its decision on the fact that Articles 1, 15, 16 and 17 of the Hague Convention all employed the permissive term "may" rather than mandatory language. Id. at 535, 107 S.Ct. at 2551, 96 L.Ed.2d at 478. Furthermore, the Supreme Court noted that Article 23 of the Hague Convention allows signatory states to opt out of the provision allowing pretrial discovery of documents by Letters of Request and Article 27 allows signatory states to use more liberal methods of rendering evidence than authorized in the Hague Convention. Id. at 536-38, 107 S.Ct. at 2551-53, 96 L.Ed.2d at 479-80. Thus, the text of the Hague Convention expressly allows signatory states to deviate from the procedures outlined in its provisions. See id. at 538, 107 S.Ct. at 2553, 96 L.Ed.2d at 480.
Additionally, the Supreme Court explained that interpreting the treaty as the exclusive governing law for obtaining discovery abroad would undermine the fair administration of justice in American courts:
The opposite conclusion of exclusivity would create three unacceptable asymmetries. First, within any lawsuit between a national of the United States and a national of another contracting party, the foreign party could obtain discovery under the Federal Rules of Civil Procedure, while the domestic party would be required to resort first to the procedures of the Hague Convention. This imbalance would run counter to the fundamental maxim of discovery that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507, 91 L.Ed. 451, 67 S.Ct. 385, [392] 34 Ohio Ops 395 (1947).

*459 Second, a rule of exclusivity would enable a company which is a citizen of another contracting state to compete with a domestic company on uneven terms, since the foreign company would be subject to less extensive discovery procedures in the event that both companies were sued in an American court. Petitioners made a voluntary decision to market their products in the United States. They are entitled to compete on equal terms with other companies operating in this market. But since the District Court unquestionably has personal jurisdiction over petitioners, they are subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors. A general rule according foreign nationals a preferred position in pretrial proceedings in our courts would conflict with the principle of equal opportunity that governs the market they elected to enter.
Third, since a rule of first use of the Hague Convention would apply to cases in which a foreign party is a national of a contracting state, but not to cases in which a foreign party is a national of any other foreign state, the rule would confer an unwarranted advantage on some domestic litigants over others similarly situated. [Societe Nationale Industrielle Aerospatiale v. United States District Court, supra, 482 U.S. at 540 n. 25, 107 S.Ct. at 2553 n. 25, 96 L.Ed.2d at 481 n. 25].
Thus, the Hague Convention procedures do not exclusively govern the discovery process abroad.
Moreover, the Supreme Court rejected the view that principles of international comity require the Hague Convention procedures to be the avenue of first resort in pursuing discovery against a foreign party. Id. at 542, 107 S.Ct. at 2554, 96 L.Ed.2d at 483. The Supreme Court reasoned that because Letters of Request are often "unduly time-consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules," a rule requiring first resort to the Hague Convention procedures would "be inconsistent with the overriding interest in the `just, speedy, and inexpensive determination' of litigation in our courts." Id. at 542-43, 107 S.Ct. at 2555, 96 L.Ed.2d at 483 (quoting Fed.R.Civ.P. 1).
Finally, the Supreme Court declined to interpret the principles of international comity in such a manner as to virtually subordinate the interests of American courts to a foreign nation whenever a discovery conflict arises. See id. at 543, 107 S.Ct. at 2555, 96 L.Ed.2d at 483. The Supreme Court defined comity as "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests *460 of other sovereign states." Id. at 543 n. 27, 107 S.Ct. at 2555 n. 27, 96 L.Ed.2d at 483 n. 27. The Supreme Court explained:
By the courtesy of nations, whatever laws are carried into execution, within the limits of any government, are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of the other governments, or their citizens.
[N]othing would be more inconvenient in the promiscuous intercourse and practice of mankind, than that what was valid by the laws of one place, should be rendered of no effect elsewhere, by a diversity of law.
"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. [Id. at 543 n. 27, 107 S.Ct. at 2555 n. 27, 96 L.Ed.2d at 483-84 n. 27 (quoting Emory v. Grenough, 3 Dall 369, 1 L.Ed. 640 (1797)) (citations omitted)].
Application of these principles compels the conclusion that the trial court properly exercised its discretion in compelling Zeitler to answer the interrogatories propounded by the plaintiffs in this matter without employing the procedures set forth in the Hague Convention. In this regard, we emphasize that the United States has a strong interest generally in assuring that product liability actions are given full attention to protect American consumers. The accident giving rise to this litigation occurred in the United States, plaintiffs reside in the United States, and New Jersey courts apparently have jurisdiction over Zeitler. Although we are not called upon to decide whether or not the interrogatories are overbroad or unduly burdensome, the interrogatories generally seek information regarding defenses, proofs, experts, insurance and counterclaims. Specifically, the information sought concerns, among other relevant issues: (1) the marketing and advertising of the chairs, (2) the manufacture, production, assembly, packaging and distribution of the chairs, and (3) the standards for testing and inspection of the chairs. It is fundamental, and indeed the United States Supreme Court has emphasized, that "[i]nterrogatories and document requests are staples of international commercial litigation, *461 no less than of other suits." Id. 482 U.S. at 539, 107 S.Ct. at 2553, 96 L.Ed.2d at 480-81.
Finally, of course, there is no proof in this record that plaintiffs' discovery request generally would violate the sovereignty of Germany or that the Hague Convention procedures would be a more effective means of obtaining the information sought than our court rules. As a matter of fact, invocation of the Hague Convention procedures might well involve considerably more time and expense than would be necessary if our court rules are employed to obtain the sought-after information. See id. at 542-43, 107 S.Ct. at 2554-55, 96 L.Ed.2d at 483.
Accordingly, the order of the Law Division compelling Zeitler to answer the interrogatories propounded by defendant is affirmed substantially for the reasons expressed by Judge Walls in his oral opinion of September 11, 1992. In affirming the order under review and in upholding plaintiffs' right to seek discovery through interrogatories propounded pursuant to our Rules of Court without resorting to the procedures set forth in the Hague Convention, we do not reach the issue as to whether the interrogatories are overbroad or burdensome or seek information that is confidential and subject to an appropriate protective order.
Affirmed.