740 A.2d 1092 (1999)
326 N.J. Super. 150
Helen HUSA, John Williams, Geraldine A. Williams, Mona Maglone, and Andrea Krinsky, on behalf of themselves and the class of similarly situated New Jersey residents, Plaintiffs,
v.
LABORATOIRES SERVIER SA, American Home Products Corporation, Interneuron Pharmaceuticals, Inc., Wyeth Laboratories, Inc., Wyeth-Ayerst International Ltd., Inc., A.H. Robins Company, Inc., Gate Pharmaceuticals, SmithKline Beecham Corporation, Seatrace Pharmaceuticals, Inc., Abana Pharmaceuticals, Inc., Richwood Pharmaceuticals, Company Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., and Fisons Pharmaceuticals, Defendants.
Debra McKeown and Thomas McKeown, Plaintiffs-Respondents,
v.
Laboratoires Servier SA, Defendant-Appellant,
and
American Home Products Corporation, Wyeth Laboratories, Inc., Wyeth-Ayerst Laboratories a Division of American Home Products Corporation, and A.H. Robins Company, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1999.
Decided November 12, 1999.
*1093 Frank Lloyd, Hackensack, for defendant-appellant Les Laboratoires Servier (Harwood Lloyd, attorneys; Peter E. Mueller and Valerie Steiner, on the brief).
Margaret M. Allen, Pennsauken, for plaintiffs-respondents Debra McKeown and Thomas McKeown (Greitzer and Locks, attorneys; James J. Pettit, of counsel; Ms. Allen, on the brief).
Before Judges D'ANNUNZIO, NEWMAN and FALL.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This is a personal injury action against Les Laboratoires Servier (LS), a French pharmaceutical corporation, and other defendants. Plaintiffs-respondents, Debra and Thomas McKeown, sought to take the depositions of three individuals living in France who either had or have high-ranking employment with LS. LS moved for an order requiring use of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Convention), 28 U.S.C.A. § 1781. We granted LS leave to appeal from a trial court ruling that declined to apply the Convention. We now reverse.
Thirty nations have acceded to the Convention, including the United States and France. One of its stated purposes is "to improve mutual judicial co-operation in civil or commercial matters." The Convention's core mechanism is the "Letter of Request." Article 1 provides that "a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." A Letter may be used only to obtain evidence "for use in judicial proceedings commenced or contemplated." Ibid. Article 2 of the Convention requires each Contracting State to designate a Central Authority "to receive Letters of Request ... and to transmit them to the authority competent to execute them." Article 2.
Article 3 provides in part:
A Letter of Request shall specify 
(a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;
(b) the names and addresses of the parties to the proceedings and their representatives, if any;
(c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;
(f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;
(g) the documents or other property, real or personal, to be inspected;
(h) any requirements that the evidence is to be given on oath or affirmation, and any special form to be used;

*1094 (i) any special method or procedure to be followed under Article 9.
A Letter may also mention any information necessary for the application of Article 11.
No legalization or other like formality may be required.
Under Article 9, the authority executing a Letter of Request "shall apply its own law as to the methods and procedures to be followed," unless the requesting authority requests that "a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution...."
A Contracting State may refuse a Letter of Request if "its sovereignty or security would be prejudiced" by its execution. Article 12. "Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it." Ibid.
The Convention is particularly pertinent in this case because of a French "blocking statute." French Penal Law No. 80-538 provides:
Subject to international treaties or agreements and laws and regulations in force, it is forbidden for any person to request, seek or communicate, in writing, orally or in any other form, documents or information of an economic, commercial, industrial, financial or technical nature leading to the constitution of evidence with a view to foreign judicial or administrative procedures or in the context of such procedures.
....
Without prejudice to such heavier penalties as are provided by law, any violation of the provisions of [this] law shall be punished by imprisonment of from two to six months and/or a fine of from 10,000 to 120,000 francs.
LS contends that use of the Convention would preclude application of the "blocking statute" because LS would be providing discovery pursuant to an international treaty or agreement.
The United States Supreme Court considered the Convention, and the blocking statute, in Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) (Aerospatiale). Justice Stevens, writing for the majority of five Justices, analyzed the relationship between the federal discovery rules and the Convention. The majority rejected the arguments that the Convention was the exclusive mechanism to collect evidence abroad for use in an American court, or that litigants must first resort to the Convention before pursuing other discovery alternatives. 482 U.S. at 533-34, 107 S.Ct. at 2550-2551, 96 L.Ed.2d at 477-78. The majority held that the Convention's mechanisms are optional. In reaching this conclusion, the Court relied on the absence of language mandating the Convention's use. 482 U.S. at 534, 107 S.Ct. at 2551, 96 L.Ed.2d at 478.
The majority also rejected the argument that the Convention did not apply to discovery from parties subject to the court's jurisdiction, but applied only to the gathering of evidence from nonparty witnesses abroad over whom the court lacked jurisdiction. 482 U.S. at 540-41, 107 S.Ct. at 2554, 96 L.Ed.2d at 482. In this regard, the majority found the Court of Appeals to have erred. 482 U.S. at 540, 107 S.Ct. at 2554, 96 L.Ed.2d at 482. Justice Stevens stated:
Thus, it appears clear to us that the optional Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention. Although these procedures are not mandatory, the Hague Convention does "apply" to the production of evidence in a litigant's possession in the sense that it is one method of seeking evidence that a court may elect to employ.
*1095 [482 U.S. at 541, 107 S.Ct. at 2554, 96 L.Ed.2d at 482.]
Justice Blackmun, writing for the four dissenting justices, criticized the majority's "case-by-case inquiry for determining whether to use Convention procedures and its failure to provide lower courts with any meaningful guidance for carrying out that inquiry." 482 U.S. at 549, 107 S.Ct. at 2558, 96 L.Ed.2d at 487. The dissent "would apply a general presumption that, in most cases, courts should resort first to the Convention." Ibid.
We are, of course, bound by the majority's construction of the Convention in Aerospatiale. Thus, we deem it to be an optional method of evidence gathering. In the present case, however, the choice is between the Convention and New Jersey procedural and substantive law. Consequently, we perceive no conflict with federal supremacy, if, in exercising the option to resort to the Convention, we are more generous in our use of the Convention's procedures than the United States' courts. Moreover, because the present litigation is in a state court, we are not concerned with issues regarding the distribution of power among the three branches of the federal government.
We have addressed use of the Convention in two cases: Vincent v. Ateliers de la Motobecane, S.A., 193 N.J.Super. 716, 475 A.2d 686 (App.Div.1984), decided before Aerospatiale, and Moake v. Source Intern. Corp., 263 N.J.Super. 455, 623 A.2d 263 (App.Div.1993), decided after Aerospatiale. In Vincent, we reversed a trial court order requiring a French defendant to provide discovery in the United States pursuant to New Jersey's discovery rules. We held that an initial attempt should be made to gather the evidence utilizing the Convention. We noted, however, that if use of the Convention is ineffective in providing reasonable and necessary discovery, then "the trial court will be free to consider the matter further." Id. at 723, 475 A.2d 686.
In Moake, this court affirmed a trial court's order rejecting a German corporation's demand that discovery from it proceed under the Convention. In affirming, we relied on Aerospatiale and emphasized "that the United States has a strong interest generally in assuring that product liability actions are given full attention to protect American consumers." Moake, supra, 263 N.J.Super. at 460, 623 A.2d 263. Finally, it was observed that "there is no proof" that the discovery request "would violate the sovereignty of Germany or that the Hague Convention procedures would be a more effective means of obtaining the information sought than our court rules." Id. at 461, 623 A.2d 263.
We observe that the three factors mentioned in Moake as justifying disregard of the Convention probably are present in every case and effectively would abrogate the Convention in New Jersey.
In a Law Division opinion encouraging use of the Convention, Judge Alley noted that after Aerospatiale was decided, and inferentially as a response to Aerospatiale, the United States participated in "a Special Commission of the Hague Conference" in 1989. The Special Commission "encouraged the giving of `priority' to the procedures of the Convention when evidence located abroad is being sought; as well as the relaxation of existing limitations which numerous countries have placed on the production of documents." Knight v. Ford Motor Co., 260 N.J.Super. 110, 115-16, 615 A.2d 297 (Law Div.1992)[1]. In what appears to be an understatement, Judge Alley observed that "application of the result in Aerospatiale, and judicial enthusiasm for the Convention have not been uniform." Id. at 117-18, 615 A.2d 297 (footnote omitted). Compare First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16 (2nd Cir.1998); Belmont Textile Mach. *1096 Co. v. Superba, S.A., 48 F.Supp.2d 521 (W.D.N.C.1999); In re Aircrash Disaster, 172 F.R.D. 295 (N.D.Ill.1997); Haynes v. Kleinwefers, 119 F.R.D. 335 (E.D.N.Y. 1988); Benton Graphics v. Uddeholm Corp., 118 F.R.D. 386 (D.N.J.1987), declining to use the Convention, with In re Perrier Bottled Water Litigation, 138 F.R.D. 348 (D.Conn.1991); Hudson v. Hermann Pfauter GmbH & Co. 117 F.R.D. 33 (N.D.N.Y.1987), which applied the Convention.
We are persuaded that the Convention should be utilized unless it is demonstrated that its use will substantially impair the search for truth, which is at the heart of all litigation, or will cause unduly prejudicial delay.
The Supreme Court in Aerospatiale noted that the United States took "the initiative in proposing that an evidence convention be adopted." 482 U.S. at 530, 107 S.Ct. at 2548, 96 L.Ed.2d at 475. The Convention was supported by the American Bar Association, the Judicial Conference of the United States and the National Conference of Commissions on Uniform State Laws. 482 U.S. at 531, 107 S.Ct. at 2549, 96 L.Ed.2d at 476. The Court acknowledged that the United States Secretary of State recommended the Convention to the President because
The substantial increase in litigation with foreign aspects arising, in part, from the unparalleled expansion of international trade and travel in recent decades had intensified the need for an effective international agreement to set up a model system to bridge differences between the common law and civil law approaches to the taking of evidence abroad.
[Ibid. (quoting the Secretary of State's letter submitted to the President).]
Since the Senate ratified the Convention in 1972, international trade and transactions have increased substantially, and litigation in New Jersey involving foreign parties is common. New Jersey courts should utilize international agreements which facilitate the conduct of cross-border litigation in the absence of demonstrable prejudice to legitimate interests. Implementation of the Convention will demonstrate our cosmopolitan approach to litigation arising out of the global economy and our sensitivity to the concerns of our trading partners. Though the French "blocking statute" cannot control an American court's exercise "of the power to order a party subject to its jurisdiction to produce evidence," Aerospatiale, supra, 482 U.S. at 544 n. 29, 107 S.Ct. at 2556, 96 L.Ed.2d at 484, the "blocking statute" is a cogent expression of French concerns which should be accommodated, when possible. As a result, our courts and litigants may harvest reciprocal benefits when in need of the cooperation of foreign tribunals to gather evidence from persons or entities not subject to the jurisdiction of our courts, or in the enforcement of judgments.
We agree with the observation of Chief Judge Munson in Hudson, supra:
It appears that the major obstacle to the effective use of Convention procedures by litigants and the courts is the fact that we are less familiar with those procedures than with the discovery provisions of the Federal Rules. Consequently, use of Convention procedures will, at least initially, result in greater expenditures of time and money for attorneys pursuing causes of action against foreign parties on behalf of their clients and could require an increased commitment of judicial resources. Nonetheless, these inconveniences alone do not outweigh the important purposes served by the Hague Convention. Further, as judges and lawyers become more familiar with the discovery rules of the Convention, it is quite possible that its procedures will prove just as effective and cost-efficient as those of the Federal Rules. To assume that the "American" rules are superior to those *1097 procedures agreed upon by the signatories of the Hague Convention without first seeing how effective Convention procedures will be in practice would reflect the same parochial biases that the Convention was designed to overcome.

[117 F.R.D. at 38-39.]
In the present case, LS has made representations regarding the effectiveness of Convention procedures, including the representation that use of those procedures will result in "American-style" depositions. In the event utilization of the Convention proves to be inadequate, the trial court can revisit the discovery issues.
The trial court's determination not to use the Convention is reversed and the case is remanded for further proceedings.
NOTES
[1] Judge Alley's opinion is also a reference source of other authorities regarding the Convention.