**In re VITAMINS ANTITRUST LITIGATION.**

**This Document Relates to: All Actions.**

**Nos. Misc. 99–197(TFH), MDL 1285.**

United States District Court, District of Columbia.

Sept. 20, 2000.

Jonathan Schiller/David Boies, Boies & Schiller, Washington, DC, Kenneth Adams, Dickstein Shapiro Morin & Oshinsky, LLP, Washington, DC, for plaintiffs.

Bruce Montgomery, Arnold & Porter, Washington, DC, for defendants.

## MEMORANDUM OPINION Re: Jurisdictional Discovery Issues

THOMAS F. HOGAN, District Judge.

Pending before the Court are eight foreign defendants' Rule 53 Objections to the Special Master's Report and Recommendation Respecting Plaintiffs' Motion to Compel and Defendants' Motions for Protective Orders ("Report" or "Report and Recommendation"). Upon careful consideration of the Special Master's Report regarding jurisdictional discovery, the defendants' Objections, the plaintiffs' response, the defendants' replies, and the entire record herein, the Court will adopt the Special Master's Report in part and deny it in part.[1] Specifically, the Court will adopt the Special Master's recommendations that jurisdictional discovery in this case be ordered to proceed under the Federal Rules of Civil Procedure ("Federal Rules") rather than through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters[2] ("Hague" or "Convention" or "Hague Convention"). The Court will also adopt the Special Master's recommendations regarding narrowing plaintiffs' discovery requests and respecting discovery through foreign parents of domestic subsidiaries and former employees. However, the Court will decline to adopt the Special Master's recommendations regarding Interrogatory No. 2; the Court finds this Interrogatory to be wholly improper, even as refined by the Special Master, and will thus grant defendants' motions for protective orders to the extent that they seek permission to refuse to answer Interrogatory No. 2.

**1.** Given the importance of the issues raised in this Report, the Court applied the de novo standard of review in this case.

**2.** See 23 U.S.T. 2555, T.I.A.S. No. 7444, 28 U.S.C. § 1781.

## I. BACKGROUND

The Court's March 27, 2000 Memorandum Opinion and Order allowed plaintiffs to take further jurisdictional discovery in order to determine whether personal jurisdiction exists over the foreign defendants under state long-arm statutes or under Fed.R.Civ.P. 4(k)(2). In response, on April 10, 2000, plaintiffs served all foreign defendants with a Rule 30(b)(6) deposition notice, document requests, and interrogatories, all relating to jurisdictional discovery. On or about April 24, 2000, the foreign defendants served responses, which largely contained objections to the plaintiffs' requests and effectively refused to grant discovery. On May 15, 2000, plaintiffs filed a joint motion to compel responses to their jurisdictional requests.[3] In response, all eight defendants filed motions for protective orders.

Thereafter, the Court referred plaintiffs' joint motion to compel and defendants motions for protective orders to the Special Master for a Report and Recommendation. After exhaustive briefing, consisting of three separate rounds of motions, the filing of numerous expert affidavits and declarations, several rounds of negotiations to revise and narrow plaintiffs' discovery requests, and extensive oral argument on these motions, the Special Master issued a fifty-one page Report and Recommendation addressing issues raised by plaintiffs' joint motion to compel and jurisdictional discovery requests and the eight foreign defendants' motions for protective orders.

On or around August 29, 2000, defendants filed Rule 53 Objections to the Special Master's Report. Plaintiffs have since filed responses to these Objections and the defendants have filed replies. The Court

**3.** Plaintiffs' motion to compel is addressed to eight foreign defendants: BASF Aktiengesellschaft ("BASF AG"), Degussa–Huls AG ("Degussa"), Eisai Co., Ltd. ("ECL"), Lonza AG, Merck KgaA, Rhone Poulenc S.A. ("RPSA"), F. Hoffman–La Roche Ltd. ("Roche"), and UCB S.A.

heard oral argument on this issue on September 13, 2000.

## II. DISCUSSION

### A. Hague Convention

The primary issue presented to the Special Master and now to the Court is whether discovery taken to establish personal jurisdiction over these eight foreign defendants must proceed under the Hague Convention or whether the Court has discretion to order this discovery to proceed in accordance with the Federal Rules. In *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987), a case involving a foreign defendant over whom the trial court had undisputed personal jurisdiction, the Supreme Court rejected a rule of first-resort to Hague and held that a trial court should consider "the particular facts, sovereign interests, and likelihood that resort to [the Hague Convention's] procedures will prove effective" in determining whether to proceed under Hague or the Federal Rules. *Id.* at 544–46, 107 S.Ct. 2542. Since *Aerospatiale* did not involve a situation like the present case, where jurisdiction is contested, the first issue to be resolved is whether jurisdictional discovery must proceed first under the Hague Convention and only later under the Federal Rules should the Convention's procedures prove ineffective or whether the *Aerospatiale* analysis also applies in cases where jurisdiction is still in dispute. If *Aerospatiale* applies, the Court must then decide whether utilization of its three-prong test leads to a ruling in favor of the Hague Convention or the Federal Rules in this case. Finally, the Court must consider whether the *Aerospatiale* analysis has any applicability to the Belgian and Japanese defendants, since Belgium and Japan are not signatories to the Hague Convention and, if the *Aerospatiale* test is inapplicable to them, whether to apply the laws of those countries or follow the Federal Rules for jurisdictional discovery of defendants UCB S.A. and ECL.

### 1. Applicability of Aerospatiale to Jurisdictional Discovery for Signatories

The first question to be answered is whether the Court must always require first-resort to Hague procedures for jurisdictional discovery or whether the three-prong test established by the Supreme Court in *Aerospatiale* governs even in cases where personal jurisdiction has not yet been conclusively established.[4] Defendants argue that, since *Aerospatiale* makes repeated references to the presence of personal jurisdiction in that case, the Supreme Court did not intend for its holding to apply to actions in which personal jurisdiction is still at issue. Plaintiffs respond that, although the Supreme Court noted the existence of personal jurisdiction in *Aerospatiale*, the reasoning of that case and the majority's refusal to accept a bright-line principle mandating use of Hague counsels against a rule of first-resort to the Convention even in cases where the jurisdictional issue has not yet been resolved.

This is an issue of first impression in our jurisdiction; in fact, not only is there no guidance from the Supreme Court or the United States Court of Appeals for the District of Columbia Circuit on the application of *Aerospatiale* to jurisdictional discovery, there is no caselaw from any circuit court on this issue. Defendants are correct that *Aerospatiale* makes numerous references to the existence of personal jurisdiction in that case. *See* 482 U.S. at 524, 107 S.Ct. 2542 ("The question presented in this case concerns the extent to which a federal district court must employ the procedures set forth in the Convention when litigants seek answers to interrogatories,

---

**4.** This issue involves only the six defendants who are signatories to the Hague Convention. The Japanese and Belgian defendants will be analyzed separately in a later section, since this analysis is not directly applicable to them.

the production of documents, and admissions from a French adversary *over whom the Court has personal jurisdiction*") (emphasis added); *id.* at 541, 107 S.Ct. 2542 (*When a litigant is subject to the jurisdiction of the district court, ...*) (emphasis added); *id.* at 540 n. 25, 107 S.Ct. 2542 ("*since the District Court unquestionably has personal jurisdiction* over petitioners, they are subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors") (emphasis added); *id.* at 544 n. 29, 107 S.Ct. 2542 ("It is well settled that such [blocking] statutes do not deprive an American court of the power to order a party *subject to its jurisdiction* to produce evidence even though the act of production may violate that statute") (emphasis added). More importantly, the question decided by the Eighth Circuit and certified by the Supreme Court for review in *Aerospatiale* was whether "*when the district court has jurisdiction over a foreign litigant* the Hague Convention ... appl[ies] to the production of evidence in that litigant's possession, even though the documents and information sought may physically be located within the territory of a foreign signatory to the Convention." *Id.* at 528, 107 S.Ct. 2542. Therefore, it is clear that the Supreme Court in *Aerospatiale* never addressed the issue of what procedures to follow in cases of jurisdictional discovery; that issue was never before the Court and certainly was not resolved by the holding of *Aerospatiale.*

 Since *Aerospatiale* does not answer the question at issue here, this Court must consider whether there are legal or policy reasons for requiring first use of Hague for jurisdictional discovery of foreign defendants despite the Supreme Court's clear rejection of this first-resort rule in cases where jurisdiction has been established. Defendants maintain that a rule of first-resort is more important for jurisdictional discovery than for merits discovery because the comity interests of the foreign nations are higher before de-

fendants are conclusively found to be subject to the Court's jurisdiction. This Court disagrees. It is well-established that a trial court has jurisdiction to determine its jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("By submitting to the jurisdiction of the Court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction"). Since the Court has jurisdiction over these foreign defendants to the extent necessary to determine whether or not they are subject to personal jurisdiction in this forum, the Court sees no legal barrier to exercising the discretion given to trial courts by *Aerospatiale* in cases of jurisdictional discovery. This conclusion is supported by the large majority of the lower court decisions that have considered this issue. *See Rich v. KIS California, Inc.,* 121 F.R.D. 254, 260 (M.D.N.C.1988) (holding that jurisdictional discovery need not be taken under Hague because *Aerospatiale* "did not carve out any exception for disputes involving personal jurisdiction" and "[s]ufficient protection is given by the Supreme Court's admonishment to district courts to be particularly sensitive to claims of abuse of discovery made by foreign litigants"); *Fishel v. BASF Group,* 175 F.R.D. 525, 529 (S.D.Iowa 1997) (concluding that the reasoning and holding of *Aerospatiale* provide that the Hague procedures are optional and do not divest federal district courts of authority to order discovery under the Federal Rules); *In re Bedford Computer Corp.,* 114 B.R. 2, 5–6 (Bankr. D.N.H.1990) (citing *Rich* and allowing discovery strictly related to jurisdictional issues to proceed under the Federal Rules). In fact, there are only two cases that support defendants' position and both are far from convincing. *See Jenco v. Martech Int'l, Inc.,* No. 86–4229, 1988 WL 54733 (E.D.La. May 19, 1988) (holding, with almost no meaningful analysis, that certain jurisdictional discovery requests

must be made under Hague because "[w]hile judicial economy may dictate that the Federal Rules of Civil Procedure should be used, the interests of protecting a foreign litigant in light of the jurisdictional problems are paramount")[5]; *Knight v. Ford Motor Co.*, 260 N.J.Super. 110, 615 A.2d 297, 301 n. 11 (L.Div.1992) (noting, in dicta, that "[i]f jurisdiction does not exist over a foreign party ..., the Convention *may* provide the only recourse for obtaining evidence.") (emphasis added). Therefore, the only reason to depart in this case from the three-part balancing test would be if, as defendants assert, the foreign nations' sovereign interests are more threatened by potential application of the Federal Rules at the jurisdictional discovery stage than they would be with merits discovery.

After careful consideration of the facts of this case and the principles of international comity, the Court cannot find that the sovereign interests of these six signatory countries would be more affected by application of the *Aerospatiale* balancing test in this case than they would be in a case where the Court has conclusively established its jurisdiction. First, the Court sees no reason why the foreign nations' sovereign interests would be offended by the investigation of this antitrust price-fixing conspiracy; many of these nations prohibit this type of conduct in their own laws and presumably all of these countries would want to have these laws enforced to the fullest extent. Second, this is not a case of speculative jurisdiction. All six of

the defendants from signatory countries have already admitted their involvement in this antitrust price-fixing conspiracy.[6] In addition, although the Court denied defendants' motions to dismiss without prejudice and ordered plaintiffs to undertake further jurisdictional discovery, the Court did find plaintiffs' allegations to show strong potential for findings of jurisdiction. Therefore, although this Court agrees that plaintiffs have not yet alleged facts sufficient to give this Court conclusive jurisdiction over these defendants, it believes that plaintiffs' allegations amount to more than mere blanket fishing expeditions. In fact, the Court agreed to allow plaintiffs jurisdictional discovery solely because it felt that they had essentially established a prima-facie basis for jurisdiction; therefore, the allegations in plaintiffs' complaints are not the type of bare-boned allegations that potentially could lead to the fishing expeditions of obvious concern to the signatory countries. *Compare Rich.*, 121 F.R.D. at 260 (holding that use of Hague was not required for jurisdictional discovery because the allegations that the French defendant had manufactured the machine involved in the suit and that it had been sold by a U.S. subsidiary were sufficient to allow limited jurisdictional discovery under the Federal Rules) and *Geo–Culture, Inc. v. Siam Investment Management, Inc.*, 147 Or.App. 536, 544, 936 P.2d 1063, 1067 (1997) (requiring plaintiff to conduct jurisdictional discovery, at least initially, only through Hague, noting that it had failed to

---

5. It is worth noting that *Jenco* left undisturbed a portion of the magistrate's opinion allowing interrogatories and document requests directed at a foreign party to proceed under the Federal Rules and overturned only the magistrate's ruling allowing depositions to be taken under the Federal Rules.

6. Five of the signatory defendants pled guilty in criminal cases and one signatory defendant, RPSA, entered into a leniency agreement; however, all six admitted to involvement in the vitamins price-fixing conspiracy. The only foreign defendant who has not pled guilty or entered into a leniency agreement and is now challenging this Court's jurisdic-

tion is UCB S.A. Therefore, any inferences drawn from these pleas and agreements cannot and will not be used against UCB S.A. As discussed above, the defendants from Belgium and Japan will be considered in a separate section since they are not signatories to the Hague Convention. However, although the Court recognizes the irony of these defendants who have admitted guilt to these offenses now arguing that this Court lacks jurisdiction over their cases, the Court notes for the record that it did not find this factor to be dispositive or even highly important in resolving this issue.

allege a prima facie basis for asserting jurisdiction over the defendant). Third, the Court finds that the Special Master has sufficiently revised plaintiffs' jurisdictional discovery requests so as to make them narrowly tailored to issues relating to the jurisdictional questions at issue rather than to the defendants' general liability. Accordingly, the Court does not believe that the sovereign interests of these foreign signatory nations would be any more offended by this narrowed jurisdictional discovery than they would be by the broader, merits-related discovery allowed by *Aerospatiale*. In conclusion, after considering the legal and policy arguments of both sides, this Court agrees with the Special Master that the first-resort rule, explicitly rejected by the Supreme Court in *Aerospatiale*, would not be any more applicable in this case than it was in *Aerospatiale*. Therefore, the Court will adopt the Special Master's recommendation to proceed under the *Aerospatiale* balancing test for the six defendants belonging to signatory countries.

### 2. Application of the Aerospatiale Balancing Test to Signatories

■ The three-prong test of *Aerospatiale* dictates that in determining whether to proceed with discovery under Hague or the Federal Rules, the court should consider "the particular facts, the sovereign interests, and likelihood that resort to [Convention] procedures will prove effective." 482 U.S. at 544, 107 S.Ct. 2542. *Aerospatiale* did not specifically rule on the burden of proof for these factors, but most courts have placed this burden on the party seeking to require first-use of the Convention.[7] The Court agrees with the Special Master that the cases placing the burden of proof on the proponents of Hague are more persuasive. The *Rich* court relies in part for its holding that Hague proponents bear the burden of establishing reasons for employing Convention procedures on the following statement in *Aerospatiale:* "The Court of Appeals erred, however, in stating that the Evidence Convention does not apply to the pending discovery demands. This holding may be interpreted as indicating that Convention procedures are not even an option that is open to the District Court .... such a rule would deny the foreign litigant a full and fair opportunity to demonstrate the appropriate reasons for employing Convention procedures in the first instance, for some aspects of the discovery process." *Aerospatiale*, 482 U.S. at 547, 107 S.Ct. 2542. This statement indicates that the Supreme Court was placing the burden on the Hague proponents to show why Convention procedures should be used in a given case. Moreover, the cases relied upon by defendants, *Hudson*, 117 F.R.D. 33, and *Knight*, 615 A.2d at 300, are far from convincing. In finding that the burden of proof should be on those advocating use of the Federal Rules, *Hudson* relies too heavily on Justice Blackmun's concurring and dissenting opinion in *Aerospatiale*. Similarly, in placing the burden on those arguing against use of Hague, *Knight* relies on the decision of the

7. *See Rich*, 121 F.R.D. at 257–8 ("[t]he proponent of using the Hague Evidence Convention bears the burden of demonstrating the necessity of using those procedures"); *In re: Perrier Bottled Water Litigation*, 138 F.R.D. 348 (D.Conn.1991) (the party urging use of the Hague Convention bears the burden of proof of persuading the trial court); *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 389 (D.N.J.1987) (party seeking to utilize Convention procedures must demonstrate appropriate reasons); *Doster v. Schenk A.G.*, 141 F.R.D. 50, 51–52 (M.D.N.C.1991) ("[I]t is more practical, if not logical, to place the burden of persuasion on the proponent of using the Hague Convention"); *Valois of America, Inc. v. Risdon Corp.*, 183 F.R.D. 344, 346 (D.Conn.1997) (same); *but see Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33 (N.D.N.Y.1987) (ruling that burden of proof is on party opposing use of Hague procedures, at least with respect to any negative impact of such procedures on U.S. interests); *Knight*, 615 A.2d at 300 (relying on post-*Aerospatiale* Special Commission on the Hague Convention to place the burden on party opposing use of Convention procedures).

**52**

Special Commission on the Hague Conference, which the Court finds should be accorded no weight because it would effectively overrule *Aerospatiale* and because it shares none of the binding authority carried by Congressional legislation or Supreme Court decisions. Therefore, the Court will adopt the Special Master's recommendation that the burden of proof be placed on the defendants to show why, under *Aerospatiale*'s three-prong test, the Hague Convention procedures should be used in this case.[8]

### a. Facts of This Case

Under the *Aerospatiale* analysis, the first factor for the Court to consider are the particular facts of this case. Of considerable importance to the Special Master in analyzing the facts of this case were the breadth and burden of these discovery requests and the criminal pleas and leniency agreements entered into by all six of the signatory foreign defendants contesting jurisdictional discovery. Defendants argue that the burdens imposed by the plaintiffs' discovery requests require use of Hague procedures. *See In re Perrier Bottled Water Litigation*, 138 F.R.D. at 355 (holding that discovery of a French company should be taken pursuant to the Hague Convention in part because the discovery requests were "not narrowly tailored inquiries designed solely to target discreet and material information . . . [but instead]

call[ed] for extremely broad responses . . ., much of which is likely to be immaterial and intrusive"). However, as discussed above, this Court finds plaintiffs' discovery requests, as refined by the Special Master, to be narrowly tailored to the issue of personal jurisdiction and thus highly relevant and not nearly as intrusive as merits discovery. *See Rich*, 121 F.R.D. at 258 ("Because plaintiffs have pared their discovery requests to ten interrogatories limited to the issue of personal jurisdiction, defendants cannot show that the information sought is intrusive"). While this Court recognizes that plaintiffs' discovery requests extend far beyond the ten interrogatories sought in *Rich*, the pertinent question is whether the requests are narrowly tailored, material to the issues in question, and as unintrusive as possible under the circumstances. The Court finds that plaintiffs' requests, as refined by the Special Master, meet these criteria. The sheer number of requests must be measured against the size and magnitude of the case at hand; given the unprecedented size and complexity of this price-fixing action, this Court cannot find that plaintiffs are bound to follow the Hague Convention based solely on the number of their discovery requests.[9] Considering the nature of this case, plaintiffs' requests, as refined by plaintiffs themselves and then again by the Special Master,[10] are as narrowly tailored

---

**8.** Although the Court agrees with the Special Master that the burden should be placed on those advocating use of the Convention procedures to show their effectiveness, the Court notes that even if the burden of proof was placed on plaintiffs, the Court agrees with the Special Master that plaintiffs have met their burden of demonstrating that Hague procedures should not be used in this case.

**9.** The Court agrees with the Special Master's assessment of *Hudson*, namely that since *Hudson* does not undertake the three-part analysis identified in *Aerospatiale* and instead adopts the factors discussed by Justice Blackmun in his dissent, *Hudson* has no relevance here.

**10.** As discussed in the Special Master's Report, plaintiffs significantly narrowed their

own discovery requests in response to specific objections raised by defendants. The Special Master further refined these requests in the Appendix to his Report and Recommendation. The Court finds these revised requests to be reasonably tailored to ascertain jurisdictional facts and as unintrusive as possible given the size and complexity of this case. *See Fishel*, 175 F.R.D. at 529 (after finding that many of the discovery requests "go primarily to the merits and are not reasonably tailored to ascertain jurisdictional facts," the court itself narrowed these discovery requests and ordered the parties to proceed under the Federal Rules); *In re Bedford*, 114 B.R. at 6 (although "the totality of discovery . . . is too extensive, unnecessary and intrusive . . ., the solution is to limit the discovery sought, and still use the F.R.C.P."); *Valois*, 183 F.R.D. at 349 (approving Federal Rules discovery on

and unintrusive as possible. Furthermore, these requests are highly relevant and crucial to the resolution of the jurisdictional questions pending before this Court. Therefore, the Court rejects defendants' argument that the burdens imposed by plaintiffs' discovery requests necessitates use of Hague procedures.

■ In analyzing the first prong of the *Aerospatiale* test, the Special Master also considered the fact that of the eight foreign defendants contesting jurisdictional discovery, all six signatory countries have either pled guilty to criminal antitrust violations or entered into a leniency agreement with the government. *See* Rep. at 23–25. The Special Master found this fact to be both "relevant" and further support for plaintiffs' argument that jurisdictional discovery in this case should proceed under the Federal Rules. *Id.* at 23–24. While the Court agrees that these factual admissions by defendants may bolster plaintiffs' jurisdictional arguments in the sense that they show that plaintiffs have more than a speculative case, the Court recognizes that these criminal pleas and agreements do not confer civil jurisdiction on this Court. *See United States v. 51 Pieces of Real Property, Roswell, New Mexico,* 17 F.3d 1306, 1313 (10th Cir.1994) (declining to find personal jurisdiction in the civil case because guilty plea does "not automatically confer jurisdiction on the court in the related civil proceeding" and defendant did not consent to jurisdiction in the civil case). In order to accommodate defendants' concerns that these pleas and agreements were given undue weight in the Special Master's Report, this Court declined to consider the guilty pleas and leniency agreements in resolving the question of whether the *Aerospatiale* test supports application of Hague or the Federal Rules in this case. Nevertheless, after striking the Special Master's analysis of these pleas and agreements, the Court concurs with the Special Master's conclusion that the facts of this case support a finding for use of the Federal Rules for jurisdictional discovery, because the revised requests are narrowly tailored to the jurisdictional question at issue and are as unintrusive as possible under the circumstances.[11]

### b. Sovereign Interests

The second factor to consider under *Aerospatiale* are the sovereign interests at stake. The Court agrees with the signatory defendants that their respective nations have significant sovereign interests in proceeding with discovery according to the Hague Convention procedures. In fact, the Court finds that most of the lower courts which have considered the issue of whether to proceed under Hague or the Federal Rules appear to have given considerably less deference to the foreign nations' sovereign interests than this Court believes is warranted. *See* William H. Baker, *Obtaining Evidence: International Discovery Techniques—The Taking of Evidence Abroad for Use in American Courts,* Appendix A, 624 PLI/Lit. 427, 468–480 (Feb.2000) (discussion of court decisions on the issue of whether discovery should proceed under Federal Rules or Hague in light of *Aerospatiale* ). Clearly, these signatory nations have a strong interest in protecting their citizens from what they may perceive as unduly burdensome discovery under evidence laws foreign to and incompatible with their own procedures. The Court agrees with the Special Master that whether plaintiffs are correct that foreign nations have no sovereign interests in protecting admitted antitrust violators is irrelevant, since those nations retain a separate and important sovereign interest in ensuring that discov-

---

condition that counsel agree to narrow burdensome and intrusive discovery requests).

**11.** The Court notes that full merits discovery, such as that allowed by the Supreme Court in

*Aerospatiale,* would be far more burdensome than the jurisdictional discovery ordered here.

ery involving their citizens be taken in accord with their traditions and accepted practices. This interest of foreign nations in the sanctity and respect of their laws is both important and deserving of significant respect.

■ However, the Court agrees with the Special Master that the second prong of *Aerospatiale* requires not only an analysis of the sovereign interests of the signatory nations but also of those of the United States. *See Aerospatiale*, 482 U.S. at 543–44, 107 S.Ct. 2542 (noting the need for "a more particularized analysis of the respective interests of the foreign nation and the requesting nation"). In fact, the Supreme Court specifically listed as a factor in the comity analysis "the extent to which non-compliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Aerospatiale*, 482 U.S. at 544 n. 28, 107 S.Ct. 2542, quoting RESTATEMENT OF FOREIGN RELATIONS LAW OF THE UNITED STATES (Revised) § 4317(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986). As previously discussed, the Court finds that plaintiffs' revised discovery requests are narrowly tailored to the jurisdictional question and that the information sought is crucial to resolution of this issue and thus to the prompt conclusion of this antitrust action. Presumably, defendants also have an interest in receiving a quick response to this jurisdictional question, so that they can determine whether or not they must prepare for defending these actions and, if so, in what fora. This case has already been delayed for at least a year due to preliminary matters, including the need to resolve several legal issues relating to jurisdiction. The Court finds that both parties have a strong interest in an efficient and effective means of obtaining this jurisdictional discovery so that this threshhold issue can be resolved. Since plaintiffs have alleged a prima facie basis for jurisdiction and their revised requests are narrowly tailored and are not the type of blind fishing expeditions of concern to these signatory nations, the Court finds that the signatory defendants' sovereign interests will not be unduly hampered by proceeding with jurisdictional discovery according to the Federal Rules.

### c. Likelihood that Resort to Hague Will Prove Effective

The third prong of *Aerospatiale* requires the Court to decide in each case whether resort to Hague procedures would likely prove effective. 482 U.S. at 544, 107 S.Ct. 2542. The question is whether proceeding with jurisdictional discovery under Hague would allow these plaintiffs to obtain the necessary testimony, documents, and written answers called for by their revised discovery requests in a timely and effective manner. The Special Master devoted over eleven pages of his Report and Recommendation to the analysis of the likelihood of effective and efficient discovery under Hague. He analyzed both the "Letters of Request" route under Chapter I of the Convention and the voluntary procedures under Chapter II. He also considered all affidavits and declarations submitted by the parties from proposed experts on this issue. After reviewing the Special Master's findings and conclusions as well as the entire record in this case and the Court's own experience with the Hague procedures, the Court finds that the Special Master's conclusions are accurate and that Hague would be extremely unlikely to provide efficient and effective discovery in this case. Given the need for prompt resolution of these jurisdictional questions and the time and cost to both sides in dragging out this process any longer than is necessary, the Court finds that jurisdictional discovery under the Federal Rules is appropriate in this case. Therefore, the Court will adopt the Special Master's recommendation to grant plaintiffs' motion to compel discovery under the Federal Rules with respect to the six defendants of signatory nations and deny

these defendants' motions for protective orders to the extent that they seek such discovery under Hague procedures.

### 3. Discovery With Respect to Non–Signatories

As noted above, the protective orders of defendants ECL and UCB S.A. must be analyzed separately because Japan and Belgium, these defendants' respective countries, are not signatories to the Hague Convention. The Court does not agree with the Special Master's recommendation that the situation of these non-signatory defendants be analyzed under the *Aerospatiale* test. Since *Aerospatiale* is concerned exclusively with the question of whether to apply the Federal Rules or the Hague Convention to discovery being sought from a signatory country, the Supreme Court's holding in that case is clearly limited to countries that have adopted the Hague Convention procedures for the taking of evidence. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70 (D.D.C.1999) (holding that *Aerospatiale* is "of limited assistance to this case since Iran is not a party to the Hague Evidence Convention"); *see also Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.*, 155 F.R.D. 626, 627 (N.D.Ind.1993) ("The court also agrees with defendants that because Japan is not a signatory to the Hague Convention on Evidence, any analysis of case law on that point is rendered moot"). Since Japan and Belgium chose not to adopt the Hague evidence procedures, any analysis of the *Aerospatiale* factors would seem wholly irrelevant to these nations.

■ Unfortunately, after finding that *Aerospatiale* is inapplicable to defendants ECL and UCB S.A., the Court is left with little guidance as to what analysis it should employ in order to determine whether to proceed under the Federal Rules or the laws of these non-signatory countries for jurisdictional discovery in this case. When asked by these defendants at the hearing what test should be applied to their situation, their response was simply: the general principles of comity and territorial preferences as expressed in international treaties and laws. In the absence of any other prescribed analysis, the Court will defer to these two defendants and analyze their situation under principles of comity, affording special attention to the international territorial preference which favors discovery procedures governed by the law of the territory where discovery is sought in the absence of any conflict between the Federal Rules and the laws of that territory. Therefore, the Court will first consider whether there is in fact any conflict between the evidence laws of Japan and Belgium and the United States; and second, in the event that there is a conflict, the Court will analyze the principles of comity in order to determine whether these principles require use of the nonsignatories' laws in this case.

### a. Discovery under the Laws of Japan

The record shows that Japan did not join the Hague Convention apparently out of fear of American-type discovery procedures; that under Japanese law "the scope of witness examination and document discovery is narrowly tailored to the allegations"; and that when the one-hundred-year-old Code of Civil Procedure Law was revised in 1996, "the Japanese legislature refused to adopt the American-type discovery system (particularly, the out-of-court deposition and document-request procedure) as excessively intrusive and therefore undesirable in the non-litigious Japanese society." *See* Fujita Decl. ¶¶ 5, 8. Although limited pretrial discovery of witnesses and documents is allowed under the laws of Japan, document requests must identify specifically the documents sought, and various documentary and testimonial privileges would prevent the taking of much evidence even if the specificity requirements were met. *See* Young Decl. at 5–9. Therefore, the Court finds that there are indeed inherent conflicts between the Japanese discovery procedures and the Federal Rules.

■ Apparently recognizing the conflicts between the Japanese system and

the Federal Rules, ECL asserts that its offer to voluntarily, upon proper service, make one deponent available to testify in Tokyo "provided that the plaintiffs narrow the topics to be covered" and to produce documents "provided that the plaintiffs narrow the scope of their request" will permit plaintiffs to obtain "reasonable discovery" under the laws of Japan. *Id.* ¶ 15; ECL 5/12/00 Mem. at 5. The Court agrees with the Special Master's finding that plaintiffs will not likely be able to obtain the necessary pretrial testimony and documentary evidence found to be proper by the Special Master and through adoption by this Court under the Laws of Japan. First, the Court is not satisfied with ECL's quite reserved and contingent offer for voluntary discovery; the Court has now decided that plaintiffs' revised requests, the very ones ECL says must be further revised, are narrowly tailored and should be answered. Second, the Court is convinced, considering Japan's antipathy to even the Hague procedures, that plaintiffs' discovery requests would not be sufficiently specific to meet the requirements of the Japanese Civil Code.[12] Therefore, despite the Court's respect for the principles of comity and Japan's sovereign interests in protecting its citizens from unduly burdensome discovery, this Court cannot find that these concerns outweigh the need for prompt and efficient resolution of the jurisdictional questions in this case. Accordingly, the Court will adopt the Special Master's recommendation that jurisdictional discovery against ECL proceed under the Federal Rules.

### b. Discovery under the Laws of Belgium

UCB S.A. argues that it is in a unique position among these foreign defendants in that it did not plead guilty or enter into a leniency agreement and plaintiffs submitted no affidavit respecting discovery under Belgian law. With regard to the first contention, the Court recognizes that UCB S.A. did not plead guilty or enter into any agreement in this case; therefore, plaintiffs' case against UCB S.A. is arguably more speculative than · against the other defendants. Nevertheless, plaintiffs' allegations against UCB S.A., as against all other defendants in this case, are quite detailed and are far from blind fishing expeditions. Therefore, the Court finds no evidence that plaintiffs' discovery requests against UCB S.A. are unjustified or unduly burdensome to this defendant. Second, with respect to plaintiffs' failure to submit contrary evidence, the Court agrees with UCB S.A. that their expert's testimony is unrebutted but it disagrees with the defendant's assertion that the evidence provided by this expert necessarily requires a ruling in favor of applying Belgian discovery procedures in this case.

UCB S.A.'s own expert stated that Belgium generally disfavors pretrial discovery in civil litigation. Heinemann 5/11/00 Decl. ¶ 3. In fact, Belgian scholars cited by Dr. Heinemann say that pretrial discovery in Belgium is "tantamount to a private house search of the opposing party" and these scholars note that "if Belgium were to ratify the Hague Evidence Convention it would make a reservation under article 23 of the Convention in order to avoid inquisitorial acts which are not meant to gather specific evidentiary materials pertaining to a pending procedure, or consist in fact of 'fishing expeditions.'" Heinemann 5/11/00 Decl. ¶ 6. Dr. Heinemann does say that "a foreign litigant is able to obtain specified

---

12. In fact, ECL has not cited to this Court a single case holding that Japanese discovery procedures should supplant the Federal Rules. Plaintiffs cite *Japan Halon Co.,* 155 F.R.D. at 627, where the court found that following Japanese procedures in pursuing discovery would be futile. Although that case is not directly analogous because the Japanese company in *Japan Halon Co.* invoked the jurisdiction of that court, the court's findings and conclusions regarding the ineffectiveness of Japanese discovery procedures is relevant to the issue here.

documents and deposition testimony" and that under Belgium law, Belgian courts are required to execute letters rogatory properly issued "so long as the discovery sought by such letters rogatory is specific and narrow and does not breach fundamental rules of Belgium." *Id.* at ¶¶ 3, 5. However, there is no indication that plaintiffs' requests would meet this criteria.

■ After considering the entire record in this case, the Court disagrees with UCB S.A. that Belgian law affords "a reasonable and effective method of obtaining jurisdictional discovery" in this case. *See* UCB S.A. 5/12/00 Mem. at 2. The Court finds that the Letters of Request procedure available under Belgian law is unlikely to secure for plaintiffs the jurisdictional discovery approved by this Court. Document and deposition discovery would most likely be thwarted by the stringent requirements for specificity. Therefore, despite the strong interest in comity and the respect that this Court has for Belgium's sovereign interests[13], the Court will adopt the Special Master's recommendation that jurisdictional discovery involving UCB S.A. proceed under the Federal Rules because it finds that Belgium's procedures significantly conflict with the Federal Rules and that these procedures would not result in prompt and effective jurisdictional discovery in this case.

## B. Interrogatory No. 2

■ Interrogatory No. 2 states: "Identify each state where you are subject to personal jurisdiction under any long-arm or other statute. If your answer is that there is no state where you are subject to personal jurisdiction, state in detail the factual support for your answer." The Special Master concluded that the first part of this Interrogatory, when limited to the forum states, was proper because it calls for an application of facts to law rather than a pure legal conclusion; however, he concluded that the second part of this Interrogatory should be deleted on the grounds that it is unnecessary under *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30 (1st Cir.1999) and that plaintiffs will be receiving affirmative information on defendants' contacts with each of the forum states in response to other discovery requests. Rep at 50. Defendants object to plaintiffs' Interrogatory No. 2 on the ground that it calls for a legal conclusion and that it improperly shifts the burden of proof from plaintiffs to defendants in direct contravention of the burden-shifting framework established by *Swiss American.* This Court agrees.

■ It is well-established that plaintiffs bear the burden of establishing personal jurisdiction over defendants. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 785 (D.C.Cir.1983). Under Fed.R.Civ.P. 4(k)(2), this burden shifts to defendants only after plaintiffs have certified that, to the best of their knowledge, these defendants are not subject to jurisdiction in any state in the United States. *Swiss American*, 191 F.3d at 41. At that point, and only at that point, defendants will be required to produce evidence that "one or more specific states exist in which [they] would be subject to suit," or, in the absence of such evidence, effectively concede that they do not have sufficient contacts with any state and may be sued anywhere pursuant to Rule 4(k)(2). *Id.* Interrogatory No. 2 effectively eliminates this burden-shifting procedure and attempts to force

---

**13.** The Court notes that Belgium's sovereign interests are particularly strong since this defendant has not pled guilty or entered into any agreement and therefore has admitted no involvement in this price-fixing conspiracy. For this reason, the Court was particularly concerned with UCB S.A.'s situation and afforded them individual consideration; however, after reviewing the entire record in this case, the Court finds that Belgium's sovereign interests will not be unduly offended by this jurisdictional discovery and that the unlikelihood of effective discovery under Belgian procedures and the need for a rapid and effective resolution of the jurisdictional questions in this case necessitate a finding in favor of the Federal Rules in this case.

the defendants into step two before plaintiffs have made the requisite certification. To require defendants to answer this Interrogatory would force them to carry the entire burden from the beginning and to show plaintiffs where they can effectively bring their actions. Such a requirement would directly contradict the burden of proof structure established by *Swiss American* and previously adopted by this Court. Therefore, the Court will decline the Special Master's recommendations with respect to Interrogatory No. 2 and will grant defendants' motions for protective orders to the extent that they seek refuge from having to answer this interrogatory.

## III. CONCLUSION

For the foregoing reasons, the Court will adopt the Special Master's recommendations with respect to the further narrowing of plaintiffs' discovery requests, as detailed in the Appendix to his Report and Recommendation. The Court will also accept his recommendations to compel jurisdictional discovery against these eight foreign defendants to proceed under the Federal Rules. Finally, the Court will adopt his recommendations with respect to discovery through foreign parents of domestic subsidiaries and former employees. However, the Court will decline his recommendation with regard to Interrogatory No. 2 and will grant defendants' motions for protective orders to the extent that they seek protection from answering this Interrogatory. An order will accompany this Opinion.