**In re LERNOUT & HAUSPIE SECURITIES LITIGATION.**

**Gary B. Filler, et al.,**

v.

**Jo Lernout, et al.**

**Stonington Partners, Inc., et al.,**

v.

**Carl L. Dammekens, et al.,**

**Paul G. Bamberg, et al.,**

v.

**Jo Lernout, et al.,**

**Janet Baker, et al.,**

v.

**KPMG LLP, et al.**

Nos. CIV.A. 00–11589–PBS, CIV.A. 02–10302–PBS, CIV.A. 02–10303–PBS, CIV.A. 02–10304–PBS.

United States District Court, D. Massachusetts.

Nov. 13, 2003.

---

Bruce A. Baird, Jason A. Levine, William D. Iverson, Paul W. Schmidt, Covington & Burling, Washington, DC, William Shields, Day, Berry & Howard, Boston, MA, Jonathan I. Handler, Day, Berry & Howard LLP, Boston, MA, for Microsoft Corporation.

James P. Bonner, Shalov, Stone & Bonner, New York City, Curtis L. Bowman, W. Todd Ver Weire, Cauley, Geller, Bowman & Coates, LLP, Little Rock, AR, Glen DeValerio, Michael G. Lange, Berman DeValerio Pease, Tabacco Burt & Pucillo, Boston, Marvin L. Frank, Rabin, Murray & Frank LLP, New York City, for Sandra Balan.

Michael P. Carroll, Sean C. Knowles, William Fenrich, Iris Gafni–Kane, Iris Gafni–Kane, Julian J. Moore, Diem–Suong T. Nguyen, Reshma M. Saujani, Michael L. Simes, Amy Stoken–Dunn, Davis, Polk & Wardwell, New York City, Kevin J. Lesinski, Seyfarth Shaw, LLP, Boston, MA, Arnold P. Messing, Choate, Hall & Stewart, Boston, MA, for KPMG LLP.

Donald Chase, Morrison, Cohen, Singer & Weinstein, LLP, New York City, Michael A. Collora, David M. Osborne, Dwyer & Collora, LLP, Boston, MA, Peter D. Weinstein, Franklin R. Weissberg, Morrison, Cohen, Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V., Nico Willaert, and Pol Hauspie.

James S. Dittmar, Goodwin Procter LLP, Boston, MA, Sanjit S. Korde, Korde & Associates, Chelmsford, MA, Jay R. Speyer, Morrison, Cohen, Singer & Weinstein LLP, New York City, for Nico Willaert and Pol Hauspie.

Michael P. Connolly, Murtha Cullina LLP, Boston, MA, Tara J. Holubar, Frank Rozzano, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, for Ellen Spooren.

James O. Fleckner, Goodwin Procter LLP, Gordon M. Jones, Robert P. Sherman, Nixon Peabody, LLP, Boston, MA, for Pol Hauspie.

Thomas J. Gallitano, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Dirk Cauwelier and Marc DePauw.

Amy M. McNamer, Steven M. Salky, Roger E. Zuckerman, Zuckerman Spaeder LLP, Washington, DC, Andrew Good, Silverglate & Good, Boston, MA, for Louis H. Verbeke.

Ellen D. Marcus, John B. Missing, Herbert Thomas, Debevoise & Plimpton, Washington, DC, for Dirk Cauwelier, Fernand Cloet, Gerard VanAcker, Hubert Detremmerie, Jan Coene, and Marc DePauw.

William R. Moorman, Stephen Wald, Craig & Macauley, P.C., Boston, MA, for Gaston Bastiaens.

David A. Piedra, Morrison, Cohen, Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V. and Pol Hauspie.

*MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANT KLYNVELD PEAT MARWICK GOERDELER BEDRIJFSREVISOREN (# 471 in 00cv11589, # 232 in 02cv10302, # 205 in 02cv10303 & # 237 in 02cv10304)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

The plaintiffs have moved to compel a large scale production of documents by defendant Klynveld Peat Marwick Goerderler Bedrijrsrevisoren ("KPMG–B"), a Belgian entity. In support of their motion, the plaintiffs submitted a memorandum of law (# 474), a Declaration of Professor Matthias Edward Storme (# 473) and an Affidavit of Patrick L. Rocco (# 472). To date, KPMG–B has produced only a few selected documents to the plaintiffs, has opposed the plaintiffs' motion to compel (# 491) and has submitted a Declaration of Professor Pierre Van Ommeslaghe (# 493) and a Declaration of Chris Engels (# 492). In response, the plaintiffs filed a reply memorandum of law (# 499) and a reply Declaration of Professor Matthias Edward Storme (# 525). With the motion having been fully briefed and a hearing having been held on October 24, 2003, the issue is in a posture for resolution.

## II. Brief Summary of the Relevant Facts and the Law [1]

The plaintiffs have been seeking to obtain documents from KPMG–B since the Summer of 2002 to no avail. Recently, the plaintiffs have become civil claimants in the criminal proceedings against KPMG–B pending in Belgium.[2] As such, the plaintiffs have been given access by the Belgian prosecutors to

---

1. Much of the law relied upon by the parties and cited to in this Memorandum and Order is Belgian law. Such law has been translated by a translator agreed upon by the parties and submitted to the Court, at its request, in three volumes. (See Compendium of Translated Belgian Law Sources Submitted in Accordance with Judge Collings' Procedural Order Dated June 16, 2003 on Plaintiffs' Motion to Compel Discovery from Defendant Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, Vol. I–III (## 551, 552,

553)). Thus, any citation herein to Belgian law is a citation to a translation contained in the Compendium.

2. Apparently, this is a recognized practice in Belgium. Indeed, KPMG–B itself recommended that the plaintiffs become civil litigants in the criminal action in Belgium as a way of obtaining the documents they sought. (# 491, p. 19)

between 25 and 30 boxes of KPMG–B audit work papers for the years 1998–2001.[3] While the plaintiffs' counsel were permitted to review these documents, they were not allowed to make or obtain copies of them. These audit work papers are a subset of the very same documents that the plaintiffs are seeking from KPMG–B.

The law that drives the decision on the instant motion is not itself particularly convoluted or complex. However, the expert relied on by the plaintiffs and the ones relied on by KPMG–B[4] vary drastically in their interpretations of the relevant law and its exceptions. What is not in dispute is that Article 458 of the Belgian Criminal Code ("Article 458") is the relevant statutory provision. That article provides that:

> Physicians, surgeons, health officers, pharmacists, midwives and all other persons whose state or profession renders them depositaries of the secrets entrusted to them and who, other than in cases in which they are called on to render testimony in legal proceedings or before a parliamentary committee and those where the law obliges such secrets to be made known, shall have disclosed same shall be liable to a punishment comprising imprisonment of from one week to six months and a fine of between one hundred francs and five hundred francs.

(# 551, Tab 1) Article 458 was made applicable to auditors by Article 27 of the Act of July 22, 1953 on the Establishment of the Institute of Auditors which provides that:

> Section 458 of the Belgian Criminal Code is applicable to auditors, trainees and persons for whom they are accountable. In addition to the exceptions provided for in this article, this duty is not applicable in the case of a written permission of the corporation to communicate a certificate or a confirmation and in the case such certificate or confirmation is directed to an audi-

tor or person who performs a similar duty pursuant to foreign law. . . .

(# 551, Tab 1) Article 20 of the Act of July 22, 1953 on the Establishment of the Institute of Auditors delineates the sanctions that may be meted out in the event of the violation of Article 458. Such sanctions include "a) a warning; b) a reprimand; c) a ban on accepting or continuing certain assignments; d) suspension for a maximum of one year; [or] e) striking off. . . . Striking off entails a ban on exercising the profession of company auditor in Belgium." (# 551, Tab 2)

### III. Analysis

While the issues involved in ruling on the instant motion are complicated and involve interpretation of unfamiliar Belgian law, the parties' positions can be summarized fairly succinctly. The plaintiffs, in response to KPMG–B's assertion that it is precluded by Belgian secrecy law from providing the requested documents, posit that there are several exemptions to the general Belgian secrecy law that require, or at least allow, KPMG–B to turn over the requested documents without risking sanctions. Those exceptions are as follows:

- when a party is defending itself in a civil or criminal action, it is allowed to turn over documents necessary for its defense;
- when a client has consented to disclosure of documents, an auditor may turn over such documents;
- when there is a court order in place, a party (here, KPMG–B) may disclose documents without risking being subject to criminal or disciplinary sanctions.

Further, say the plaintiffs, in this case, the Court should order KPMG–B to comply with the plaintiffs' requests and then if KPMG–B refuses, the Court can hold a contempt hearing. The plaintiffs' most compelling argument, however, is that in light of their recent review of the audit work papers in Belgium,

---

**3.** At the October 24th hearing on this motion, Steven Singer, an attorney for Stonington Partners, represented that he had just been in Belgium reviewing these 25–30 boxes of documents. Thus, he could attest to what the boxes contained.

**4.** The plaintiffs rely on the opinion of Professor Matthias Edward Storme ("Storme") and KPMG–B relies on the opinions of Professor Pierre Van Ommeslaghe ("Ommeslaghe") and Chris Engels ("Engels").

such documents have already been disclosed, are therefore no longer confidential and thus there is no reason that KPMG–B cannot simply turn over copies of documents that the plaintiffs have already seen.

KPMG–B's position, on the other hand, is that the plaintiffs have misconstrued the exceptions to the secrecy law. First, KPMG–B asserts that a party acting in defense of a civil or criminal action may disclose only those documents that are strictly necessary for its defense before a court.[5] That is, KPMG–B seems to suggest that a party may reveal only those very few documents that would be crucial to its defense, not make a massive disclosure of all documents that might help its defense. Second, KPMG–B dismisses the "client consent" exemption since L & H has not consented to KPMG–B's disclosure of any documents. Next, KPMG–B cites to the Data Protection Act, asserting that such act prohibits KPMG–B from turning over many of the documents requested by the plaintiffs because many of the sought after documents constitute "personal data" within the meaning of the Data Protection Act[6]. Next, KPMG–B suggests that the plaintiffs have alternative ways of obtaining the sought after documents-specifically, they could utilize letters rogatory. Finally, KPMG–B argues that considerations of international comity weigh in favor of denying the plaintiffs' motion to compel and protecting KPMG–B from being subject to potential criminal and disciplinary action.[7]

In sum, KPMG–B's view is that Belgian secrecy law prohibits it from turning over any of the requested documents; if it were to do so, it would be at risk of incurring both criminal action and disciplinary sanctions. KPMG–B, however, had little to say with regard to whether it may turn over copies of the documents that the plaintiffs have already seen in Belgium, other than to take the tenuous position that it would still risk incurring criminal and disciplinary sanctions if it were to do so.

## A. KPMG–B's Audit Work Papers

■ Both common sense and the law dictate that KPMG–B should be required to produce copies of its audit work papers for the years 1998–2001[8] since the plaintiffs have already been made privy to the information contained within such documents. As stated above, the plaintiffs have already reviewed the audit work papers. And, eventually, they may receive copies of these documents from the Belgian prosecutors. However, since it is unclear when (if ever) they will obtain the copies from the Belgian authorities, KPMG–B should make their copies of the same documents available to the plaintiffs. It seems absurd that the plaintiffs should have to resort to the time-consuming and uncertain process of letters rogatory to obtain documents they have already seen and which KPMG–B readily has in its possession. Thus, from a common sense perspective, the most logical result is for KPMG–B to turn over the audit work papers.

Of course, common sense does not in itself rule the day. In this situation, however, the law also appears to be squarely on the plaintiffs' side. First, Article 458 contains a so-

**5.** In their reply brief the plaintiffs dispute KPMG–B's assertion and maintain that KPMG–B has interpreted the exception much too narrowly. In other words, say the plaintiffs, KPMG–B could turn over a lot of documents that might help its defense, without being subject to penalties.

**6.** At the hearing, KPMG–B's counsel explained further that, in his view, the Data Protection Act protects documents such as personnel files, information regarding compensation and personal information that would identify a specific employee.

**7.** KPMG–B does not respond in any substantive way to the plaintiffs' argument that a court order from this Court would allow KPMG–B to provide the requested documents without risking criminal or civil penalty. At the hearing, KPMG–B's counsel suggested that Article 458 simply does not contemplate an exception for court ordered disclosure of documents.

**8.** Counsel for KPMG–B represented at the hearing that he was not sure whether KPMG–B was in possession of all such audit work papers. Of course, KPMG–B cannot turn over documents it does not have; thus, the order to turn over copies of the audit work papers pertains only to those documents in KPMG–B's actual or constructive possession, custody or control.

called "self defense" exception; that is, KPMG–B may turn over documents relevant to its own defense in a criminal or civil action. That statute sets out, in relevant part, that those whose "profession renders them depositaries of the secrets entrusted to them and who, other than in cases in which they are called on to render testimony in legal proceedings... and those where the law obliges such secrets to be made known, shall have disclosed same shall be liable to a punishment...." (emphasis added). According to the plaintiffs' expert, "it is clear that no duty of secrecy applies to prevent disclosure of documents or information that is necessary for an auditor to defend itself from civil or criminal liability." (# 473, ¶ 16) Moreover:

> When an auditor is himself called to testify as a defendant or when he is the subject of a civil liability action, it is generally considered that he is free to express himself in order to defend himself; he may, without violating professional confidentiality, cite all the evidence that he deems useful to his defense, even if his client requests that he maintain confidentiality. This theory-which appears to us to be persuasive-is specifically justified by the primacy of the principle of defense rights over professional confidentiality.

> However, an auditor who decides to remain silent cannot invoke professional confidentiality without limitations. In fact, according to the Court of Cassation, the possessor of confidential information named as a defendant in a court action cannot raise his professional confidentiality obligation as an objection for the sole purpose of shielding himself from the legal proceedings brought against him.

R. Prioux, Les exceptions au secret professionnel du Réviseur d'entreprises, in Cahiers AEDPF, Le révision des comptes annuels et des comptes consolides, Brussels, Bruylant, 2000, p. 60, No. 17 (internal citations omitted) (cited in # 525, ¶ 3); see also Court of Cassation decision of February 5, 1985 stating that

"Art. 458 Penal Code is not applicable where the person obliged to maintain secrecy has to defend itself in Court." (cited in # 473, ¶ 15)

Finally, according to Storme, an "auditor that discloses documents [necessary for its defense] does not violate any Belgian law, and is not subject to any penalty under Belgian law" and notably Storme did not find "any reported decision in which the Institute [of Auditors] disciplined an auditor who was a defendant in a legal proceeding for violating the duty of secrecy." (# 473, ¶ 16; # 525, ¶ 4) Thus, according to the authority discussed above, KPMG–B, clearly a defendant in these related civil actions who will be called upon to render testimony could, without risking criminal or disciplinary action, turn over documents that would be useful to its defense-i.e., the audit work papers-particularly since the plaintiffs have already seen such documents.

Next, in further support of their position that the Court should allow their motion to compel, the plaintiffs posited at the hearing that Article 458 contains a "court order" exception. Apparently, the plaintiffs were relying on the language in Article 458 that exempts from penalty auditors (and others) who disclose information "where the law obliges such secrets to be made known." If a court order were in place directing that KPMG–B turn over the documents that the plaintiffs have already been made privy to, the law would be, in the Court's view, "obliging" that KPMG–B reveal the "secret" information and seemingly KPMG–B would not be subject to penalties or sanctions. In short, a court order here requiring KPMG–B to provide copies of the audit work papers to the plaintiffs would come within the purview of Article 458, specifically that exemption providing that an auditor may make secret information available if the law so obliges.

In light of the self defense exception, the court order exception and simple common sense [9], this Court's position is that KPMG–B

---

9. The Court need not discuss the comity balancing test set forth in *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) and addressed at length by the parties since that test does not apply to Belgium which is not a signatory to the Hague Convention. "Since Aerospatiale is concerned exclusively with the question of whether to apply the Federal Rules or the Hague Convention to discovery being sought from a signatory country, the Supreme Court's holding in that

must turn over copies of the audit work papers that the plaintiffs have already seen in Belgium. Accordingly, it will be ordered that KPMG–B provide to the plaintiffs copies of the audit work papers for the years 1998–2001 within its possession, custody or control.[10]

### B. Audit Manuals

■ The plaintiffs are seeking from KPMG–B inter alia "[a]ll audit manuals in effect for any of the Defined KPMG Entities at any time during the period from January 1, 1997 to the present, including all revisions thereto." (# 472, Tab A, p. 9) KPMG–B to date has not produced any audit manuals, apparently relying on the purported protections of Article 458 and the Data Protection Act. The Data Protection Act sets out, in relevant part, that "[a]ny natural person shall be entitled to the protection of his fundamental rights and freedoms, in particular the protection of his privacy, with regard to the processing of personal data relating to him." (# 551, Tab 3) Such law applies "to the processing of personal data wholly or partly by automatic means, as well as to the processing otherwise than by automatic means of personal data that form part of or are intended to form part of a filing system." (Id.) [11]

Article 458, however, does not appear to protect the audit manuals from disclosure to the plaintiffs. According to the plaintiffs' expert, "Article 458 applies only to confidential information that has been entrusted to the auditor by the client.... It does not apply to information concerning the client that the auditor obtains from other sources during the course of the audit. Accordingly, documents such as audit manuals...which do contain confidential information provided by the client...are not subject to the duty of secrecy under Article 458." (# 473, ¶ 13)

Notably, KPMG–B's expert, Van Ommeslaghe, skirts the issue of whether the audit manuals are protected, even though he specifically points to other documents that he asserts are covered by "the duty of professional secrecy" in Belgium: "documents communicated by the client; the auditor's personal notes; correspondence with the client; information with respect to the conclusion of a contract by the client; information with respect to third parties; and advice on accounting and tax issues." (# 493, ¶ 17) Similarly, KPMG–B's other expert, Engels, makes no mention of audit manuals in his fairly comprehensive declaration addressing the Data Protection Act. (See generally # 492) Moreover, when questioned at the hearing, KPMG–B's counsel did not provide support for his position that the audit manuals are protected, other than to suggest that the manuals would be generally protected by Belgian secrecy law.

Thus, as discussed above, Article 458 does not protect the audit manuals from disclosure. Nor does the Data Protection Act seem to prevent KPMG–B from turning over the audit manuals. That act pertains to "personal data" such as "diaries, desk and

case is clearly limited to countries that have adopted the Hague Convention.... Since Belgium chose not to adopt the Hague evidence procedures, any analysis of the Aerospatiale factors would seem wholly irrelevant." In re Vitamins Antitrust Litig., 120 F.Supp.2d 45, 55 (D.D.C., 2000), amended in part, 2000 WL 33142129 (D.D.C., Nov.22, 2000). The Court notes that the Vitamins Antitrust Court decided that discovery would proceed under the Federal Rules rather than pursuant to Belgium's discovery procedures because "Belgium's procedures significantly conflict with the Federal Rules and...these procedures would not result in prompt and effective ...discovery in this case." 120 F.Supp.2d at 57. However, in the instant case, where privilege concerns are implicated, the Court has decided to take into consideration Belgian discovery procedures and interpret Belgian law, rather than to rely solely on the Federal Rules.

10. While the plaintiffs did not address the issue in their papers, it seems that further support for their position is provided by the fact that Article 458 protects "secrets" and since the information in the audit work papers has already been made available to the plaintiffs through the Belgian prosecutors, it is questionable whether that information can still be considered "secret." That is, pursuant to Article 458, KPMG–B could be subject to penalties and sanctions if it disclosed "secret" information, but it seems that by virtue of the plaintiffs already having had access to the information (although not the documents themselves), it is no longer secret and KPMG–B could not be punished for turning over such non-secret information.

11. There are numerous exceptions to this law that are set forth in full at # 551, Tab 3, pp. 2–3.

office files, personnel files, documents regarding compensation of individuals." (# 492, ¶ 5) Audit manuals simply do not come within the scope of the Data Protection Act. Therefore, there is no legitimate basis upon which KPMG–B can rely to object to turning over the audit manuals, and KPMG–B shall be required to provide audit manuals covering the time frame from January 1, 1997 to November 29, 2000.

### C. Other Requested Documents and Interrogatories

With regard to all of the other documents sought by the plaintiffs and interrogatories which the plaintiffs have posed, counsel are ORDERED to meet and confer in a good-faith attempt to reach an agreement on the scope of disclosure. In attempting to reach an agreement, counsel shall take note of prior Orders of the Court on disputed issues in discovery and to assume that, for the most part, the Court, on a motion to compel, will follow the contours of its previous orders. Counsel should also note that, where appropriate, the Court would allow redaction of all personal information contained in the requested documents. The process of "meeting and conferring" shall be completed by the close of business on December 3, 2003.

### IV. Conclusion

For the reasons stated, it is hereby ORDERED that Plaintiffs' Motion to Compel Discovery from Defendant Klynveld Peat Marwick Goerderler Bedrijfsrevisoren (# 471) be, and the same hereby is, ALLOWED to the extent that Defendant Klynveld Peat Marwick Goerderler Bedrijfsrevisoren is ORDERED to produce to plaintiffs' counsel, on or before the close of business on Monday, December 1, 2003, copies of all audit work papers for the years 1998–2001 in its possession, custody or control and all audit manuals for the period January 1, 1997 to November 29, 2000, including all revisions thereto, in its possession, custody or control. As to all other discovery sought, it is ORDERED that Plaintiffs' Motion to Compel Discovery from Defendant Klynveld Peat Marwick Goerderler Bedrijfsrevisoren (# 471) be, and the same hereby is, DENIED without prejudice to filing a motion to compel as to only those specific items as to which agreement cannot be reached during the "meet and confer" process.